97 So.2d 21 (1957)
The BOARD OF PUBLIC INSTRUCTION OF DADE COUNTY, Florida, a body corporate and politic under the laws of the State of Florida, Appellant,
v.
EVERETT W. MARTIN & SON, Inc., a Florida corporation, Appellee.
Supreme Court of Florida.
September 18, 1957.
*22 Boardman & Bolles and John S. Lloyd, Miami, for appellant.
Horton & Horton, Miami, for appellee.
ALLEN, District Judge.
The Dade County Board of Public Instruction hereinafter referred to as the Board, the appellant, plaintiff below, filed a Complaint in the Circuit Court for Dade County, Florida charging that Everett W. Martin & Son, Inc., a Florida Corporation, the defendant below, appellee here, in using a substituted jalousie instead of the type of jalousie specified according to the terms of a building contract entered into between plaintiff and the defendant, falsely represented to the plaintiff that the defendant paid $20,237 for the substituted jalousies when actually it had paid $10,276 for the substituted jalousies. The appellee Contractor, defendant below, pursuant to the building contract, proposed a credit to the Board in the sum of $5,186.70 if the substituted jalousies were accepted. The Board accepted this credit.
The contract provided that in case of a substitution, if the substituted item was less than the specified item, the Board would receive the difference in cost between the two items less ten per cent (10%).
The plaintiff sued for the difference between the amount that the contractor advised the Board the substituted jalousies cost and the amount which the contractor actually paid for the substitute. The Jury returned a verdict of "not guilty". The trial court entered a Judgment in favor of the defendant. The plaintiff filed a motion for a entry of judgment and an alternative motion for a new trial primarily on the grounds that the court erred in giving certain of the defendant's requested instructions and in denying certain of the plaintiff's instructions; that the instructions given and denied were erroneous as a matter of law resulting in the jury being misled in arriving at a verdict in favor of the defendant.
Plaintiff, on appeal, states the point involved as follows:
"Whether or not the jury reached an improper verdict in favor of the Appellee because they were misled by the erroneous and inapplicable instructions given them by the trial court." The Defendant-Appellee  states the question:
"Was there any testimony or evidence in the record of the trial of this cause that would have justified the jury in rendering a verdict for the Appellee?"
The Complaint was based on fraud and deceit. The defendant in its Answer, in addition to denials as to fraud and deceit, raised the question of estoppel by reason of a previous trial between the same parties involving the same issue; also that a new contract had been entered into by the parties involving the jalousies in question.
The basic facts from the appellant's standpoint was that the appellee represented that he was going to pay the sum of $20,237 for substituted jalousie windows to be placed in the Douglas Primary School and according to the terms of the building contract, the appellee should have refunded or credited to the appellant ninety per cent (90%) of the difference between $26,000, the cost of the original jalousie windows, and $10,276, which the contractor admittedly paid for the substituted jalousies, or $14,151.60. Instead, the appellee refunded or credited only ninety per cent (90%) of the difference between $26,000 and $20,237, or $5,186.70.
*23 The appellee, during the trial of the case, introduced evidence to show that neither the Board nor its architects made any independent investigations to determine what the contractor actually paid for the substituted jalousies.
The plaintiff admitted that no independent investigation was made as it relied upon the statements of the contractor that he paid $20,237 while actually he had only paid $10,276.
The lower court gave the defendant's Requested Charge Number 4:
"I further charge you gentlemen that there was a duty on the part of the Plaintiff, through its agents, to wit: the architects, to inquire into and ascertain the truth or falsity of the representations made by the Defendant, providing, of course, that you find that the Defendant did not prevent the Plaintiff, or its agents, from examining into the truth or falsity of the Defendant's representations; that if you find that the Defendants did not hinder or impede the Plaintiff, or its agents, from conducting inquiry or investigation into the truth or falsity of the Defendant's representations, or that through negligence or oversight, they the Plaintiff, failed to make inquiry, then and in that event, I charge you that the Plaintiff's agents were derelict in their duty to their principal and that such dereliction cannot be imputed or charged to the defendant.
"I further charge you that one of the first duties that an agent holds to its principal is to remain loyal to the latter's interest. Consequently, it is his duty at all times to disclose to his principal any facts or circumstances that might effect the interest of the principal. Therefore, I instruct you that the principal is liable civilly for any act of his agent where there was negligence on the part of the agent, if such act constituting negligence was done within the scope of the agent's authority."
The Court denied the plaintiff's Requested Charge Number 5 which was as follows:
"If you believe from the evidence that the Defendant, by active deceit or fraud or by use of any artifice or deception, caused the Plaintiff to accept $5,186.70 as a credit on the substituted jalousie windows used in the Douglas Primary School instead of the $14,151.60, and that by such artifice and deception the Plaintiff was lulled into a false sense of security, the Defendant is liable for its fraud even though the information might have been as accessible to the Plaintiff as it was to the Defendant. Therefore, each of the parties to the contract must take care not to say or do anything tending to impose upon the other."
The defendant, in its brief, did not defend the charges given or refused by the lower court but based its arguments for an affirmance upon the theory that:
"The only question involved in this appeal insofar as the Appellee is concerned and as it conceives the correct question to be, is whether or not there was any evidence or testimony in the record to justify or support the verdict rendered by the jury in favor of the Appellee."
The basic question of law involved in the giving of the above challenged instruction and the refusal to give the other instruction hereinabove set forth is whether, under the facts in this case, a claim founded upon a fraudulent misrepresentation of fact can be defended in court by showing that the deceived party should have made an independent investigation to ascertain the truth or falsity of the representer's statements.
23 American Jurisprudence, page 970, Section 161, "Fraud and Deceit", states the rule as followed at the present time in *24 practically all American jurisdictions, in respect of transactions involving both real and personal property, that one to whom a positive, distinct, and definite representation has been made, is entitled to rely on such representation and need not make further inquiry concerning the particular facts involved.
The above authority refers to the case of Williams v. McFadden, 23 Fla. 143, 1 So. 618.
In the case of Wheeler v. Baars, 33 Fla. 696, 15 So. 584, 588, which was an action involving false misrepresentation, the court, in its opinion, said:
"It is contended, further, for the appellant that the judgment should be reversed because the proofs show that the lien whose existence produced the plaintiff's damage was a matter of record and that it was the plaintiff's duty to search those records for himself, the access thereto being easy, and that he had no right to rely upon the defendant's representations contrary to the facts that would have been disclosed by such record. There are some authorities that sustain this view of the law, but we are satisfied that the great weight of the authorities, English and American, supported by the soundest reasoning, establish a contrary doctrine that is thus forcefully expressed by Zollars, C.J. in West v. Wright, 98 Ind. 335: `There may be good, prudential reasons why, when I am selling you a piece of land, or a mortgage, you should not rely upon my statement of the facts of the title, but if I have made that statement for the fraudulent purpose of inducing you to purchase, and you have in good faith made the purchase in reliance upon its truth, instead of making the examination for yourself, it does not lie with me to say to you: "It is true that I lied to you, and for the purpose of defrauding you, but you were guilty of negligence  of want of ordinary care  in believing that I told the truth; and, because you trusted to my word, when you ought to have suspected me of falsehood, I am entitled to the fruits of my falsehood and cunning, and you are without remedy."' McClellan v. Scott, 24 Wis. 81; David v. Park, 103 Mass. 501; Upshaw v. Debow, 7 Bush, Ky., 442; Linington v. Strong, 107 Ill. 295; Reynell v. Sprye, 1 De Gex, M. & G. 660; Olson v. Orton, 28 Minn. 36, 8 N.W. 878; Parham v. Randolph, 4 How., Miss., 435. As there must be a reversal of the judgment appealed from because of another error in the charge of the court, presently to be noticed, we do not think it necessary further to discuss the main points presented by the instructions given or refused, since, from what has been said, any defects or omissions therein can, upon another trial, be rectified."
The annotator in 61 A.L.R. at page 497 under the topic, "Fraudulent Misrepresentation" asserts the rule to be:
"Where the seller practices artifice and wilful fraud upon the buyer, misrepresenting the articles sold, intending that the buyer shall rely upon the representations, it cannot, according to the weight of authority, escape liability for his fraud, on the ground that the buyer gave credence to the representations and did not avail himself of his opportunity to investigate the same."
In Pattiz v. Semple, D.C., 12 F.2d 276, 278, affirmed in 7 Cir., 18 F.2d 955, the court said:
"Where representation is made in positive terms as to a fact actually or presumptively within the speaker's knowledge, and contains nothing so improbable as to cause doubt of its truth, the hearer may rely upon it without investigation, and this is true, although the means of investigation were within the reach of the injured party, and the parties occupied adversary positions *25 toward each other. Since the very purpose of fraud is to cheat the victim by making him neglect the precautions essential to prevent injury, to deny relief because the victim was negligent would encourage dishonesty. In such cases the fraud-feasor will not be heard to say that he is a person unworthy of belief, and that plaintiff was negligent in trusting him, and was cheated through his own credulity."
See, also, Bailey v. Smith, 57 App.D.C. 369, 23 F.2d 977.
In Davis v. Mitchell, 72 Or. 165, 142 P. 788, 794, the court said:
"When a person, for the purpose of cheating and defrauding another, makes false representations as to material facts, and the person to whom the false representations are so made believes them to be true and is thereby induced to enter into a contract, to his injury, with the person making such false representations, the person who made such false representations cannot defeat a suit to rescind the contract, so entered into, by showing that the person thus defrauded could have ascertained that such representations were false, by the exercise of diligence."
The case now before this Court does not involve liability for mere sales talk or "puffing" statements. So the rules effecting cases of this type are inapplicable here.
In the case of Williams v. McFadden, 23 Fla. 143, 1 So. 618, at page 620, the Court said:
"The law, we think, is correctly stated in the cases cited above. A misrepresentation made by a seller as to a material fact, knowing at the time that it was untrue upon which the purchaser relied is actionable. A statement made by the vendor which is tantamount to an estimate of opinion, such as value, condition, character, adaptability to certain uses, * * * is not actionable unless the seller resorts to some fraudulent means to prevent the purchaser from examining the property. We have examined the various cases in the brief of the appellee, some of which decide that, where representations are made by the seller as to matter of opinion of property which is situated in another state, hundreds of miles away, and of which a personal examination by the purchaser would be inconvenient and expensive, are exceptions to the last rule; the courts holding that, under such circumstances, the purchaser was guilty of no negligence in not examining the land, and in relying on the statements of the seller. These are mostly recent cases, and limit the application of the doctrine of caveat emptor to transactions where the examination of the land would suit the convenience of the purchaser, and was not attended with expense. This salutary rule cannot, in our judgment, be abridged in such a manner without a violation of old and well established principles of law. Some of the other cases cited by appellee very plainly lose sight of the distinction between statements of fact and mere opinions. When a seller asserts the existence of a fact, there is no room for the exercise of judgment. Observation and memory being the only faculties employed, a mis-statement by him can be easily detected. The law permits a purchaser to rely on such statements for the reason that the existence or non-existence of the alleged facts, being easily susceptible of proof, furnish a test of the good faith of the seller. On the contrary, human opinion is so various and discordant, and what it really is so difficult of proof, that the law permits great latitude to statements which are properly traceable to it."
In the case of Joiner v. McCullers, 158 Fla. 562, 28 So.2d 823, 824, the Court held *26 that where certain executors and trustees under will which provided that certain property should be held in trust until it could be sold at a fair price, which must be agreed to by a majority of the children and where the said executors and trustees bought certain undivided interest in two tracts of land which one of the trustees acting for himself and his co-trustees represented was worth more than $10 per acre and that there was not any timber on the land which statement was known to be false, and the timber on one tract had been sold for $1,800, that the parties who had acted and relied on such statements could have the contract rescinded. In its decision the Court quoted from 12 R.C.L. page 319, Section 80, as follows:
"`The rule that fraud cannot be predicated of a failure to disclose facts where the information is as accessible to one party as to the other, and the truth may be ascertained by the exercise of reasonable diligence, does not justify a resort to active deceit or fraud, and hence, does not apply where a party in addition to non-disclosure uses any artifice to throw the other party off his guard and to lull him into a false security. Therefore, each party to the contract must take care not to say or do anything tending to impose upon the other. The concealment becomes a fraud where it is effected by misleading and deceptive talk, acts of conduct, or is accompanied by misrepresentations, or where in addition to a party's silence there is any statement, word or act on his part which tends affirmatively to a suppression of the truth, or to the covering up or disguising of the truth, or to a withdrawal or distraction of a party's addition to the real facts; then the line is over stepped and the concealment becomes a fraud.'"
In the case of Potakar v. Hurtak, Fla., 82 So.2d 502, 504, an action by the purchaser of a restaurant for damages in deceit on account of allegedly false representation that restaurant had made profit in the past and in which action the Circuit Judge dismissed the complaint on the grounds that the said complaint was insufficient for failure to disclose falsity of the representation, Plaintiff's right to rely thereon and Plaintiff's diligence in investigating the facts. The Court in its opinion quoted from 23 Am.Jur., "Fraud and Deceit", page 960, section 155, as to the general rule to investigate fraudulent statements:
"* * * It has frequently been stated that in order that false representations be a ground for an action of deceit, or for rescission of a contract entered into in reliance thereon, there must be such as are calculated to impose upon or deceive a person of ordinary prudence, and of such a character that a reasonably prudent person would rely on them. According to other courts, the standard for measuring the conduct of the representee is subjective, based not on what the ordinary man would do under the circumstances, but on what the particular representee should have done. Under this view, the test for determining whether one party to a transaction has the right to rely on the representations of the other is not whether a reasonable man would be justified in relying on such representations, but whether they were of such a nature and made in such circumstances that the complaining party had a right to rely thereon. A rule which has been approved, and which combines those elements of both the objective and subjective test which have been stated by the courts enunciating them to be desirable, is that in measuring the right to rely upon representations, every person must use reasonable diligence for his own protection. Under any standard of conduct, and in the absence of accompanying actual deception, artifice, or misconduct, it is well agreed that where the means of knowledge are at hand and *27 are equally available to both parties, and the subject matter is equally open to their inspection, if one of them does not avail himself of those means and opportunities, he will not be heard to say that he was deceived by the other's misrepresentations. * * *"
We are of the opinion that in this case, it was not the duty of the Board's architects to investigate the cost of the substituted material purchased by the contractor. The architect's duty generally is to supervise the construction job to see that the contractor complies with the plans and specifications; that the material that is placed in the building is of the type and quality that the plans and specifications call for; that where there are substituted materials which are permitted under the contract, that such materials will fit into the plans and specifications under which the contract is being performed.
We believe that the Board and its agents, the architects, were justified in accepting the representation of the contractor that he paid a certain sum for the substituted jalousies without having to go to the company which sold the jalousies to the contractor to determine the price actually paid by the contractor. Any other rule would place a heavy burden on the party having a building constructed. Thousands of items are often purchased by the contractor under a big building construction contract. When numerous items are substituted pursuant to the terms of a contract, certainly the owner and his agent, the architect, should be able to trust the contractor's statement that he had paid a certain sum for the substituted item, without being negligent in so doing.
We are of the opinion that defendant's Charge Number 4 given by the Court at its request and the refusal to give requested Charge Number 5 of the plaintiff were erroneous in law and were prejudicial to the plaintiff.
"The office of an instruction is to enlighten the jury upon questions of law pertinent to the issues of fact submitted to them in the trial of the case. And an instruction which tends to confuse rather than enlighten, and which is calculated to and may have misled the jury and cause them to arrive at a conclusion that otherwise would not have been reached by them, is cause for reversal of the judgment." Holman Livestock Co. v. Louisville and N.R. Co., 81 Fla. 194, 87 So. 750, 751, and cases there cited.
Case reversed and new trial ordered.
TERRELL, C.J., and THOMAS, ROBERTS and DREW, JJ., concur.