ALLEN, Acting Chief Judge.
The appellant, as plaintiff in the lower court, filed an action for rescission of a contract of purchase of a motel and cancellation of the purchase money mortgage against the appellee-defendants alleging that the defendant, the former owners and operators of the motel, fraudulently misrepresented the past earnings of the motel; that plaintiff relied upon these fraudulent misrepresentations in purchasing the motel; and that plaintiff was therefore entitled to be placed in status quo. The defendants answered denying fraud and counterclaimed seeking foreclosure of a second mortgage which had been executed to defendants by plaintiff at the time of purchase. The plaintiff put on its case after which the defendants moved to dismiss on the ground that plaintiff had failed to prove actual fraud. The lower court took the matter under advisement and subsequently dismissed plaintiff’s complaint stating that plaintiff had proved material fraud on the part of the defendants but that plaintiff had failed to reasonably apprise himself of the facts before consummating the purchase from defendants. It is from this order that plaintiff has appealed. The counterclaim is still pending in the lower court.
During the fall of 1958 the plaintiff, George V. Kaminsky, (hereafter referred to as Kay) inquired of H. N. Wimmers, a real estate broker in Venice, concerning any income producing properties on the market in the Venice area. The real estate broker showed the Holland Shores Motel to tire plaintiff and introduced the plaintiff to the defendants, who owned and operated the motel. After various inspections of the premises and conversations with defendants, plaintiff requested a statement of past earnings of the motel.
The defendants furnished some information to the broker, who in turn prepared a statement, which was turned over to plaintiff, showing the earnings for September, 1957, through August, 1958, to have been in excess of $24,000.
Various offers and counter-offers were made and on January 10, 1959, the parties entered into a contract of purchase of the motel for a price of $122,500. Throughout this period defendants contended they had sent all their financial statements, books, etc. to their bookkeeper in Boston for the preparation of income tax forms. The plaintiff insisted on verification of the past earnings and defendants subsequently permitted him to see the guest registration books of the motel. The plaintiff requested further proof and informed the defendants that if further proof was not forthcoming the deal was off. The plaintiff requested defendants to release to him a record of the sales tax receipts on the rentals. The defendants refused but did furnish the plaintiff a checkbook containing,- among other checks, the stubs purporting to be the stubs from checks sent to the Comptroller’s office. By totaling up the tax, which is *46 3% of the rentals, the plaintiff ascertained that this would indicate a figure within 10% of the $24,000 alleged income. After this was ascertained, the parties entered into the contract referred to above.
After the transaction was consummated and the plaintiff took over the operation of the motel, the plaintiff discovered that the earnings for the preceding year had been actually around $16,000 instead of the $24,000 alleged by the defendants.
The plaintiff went into possession on January 16, 1959. He states that he discovered the alleged fraud one week later. The plaintiff waited until April to demand rescission but explains the reason as being that since February and March are the best months, he wanted to see what the maximum per cent of occupancy would be.
The judge below, in an opinion granting the defendants’ motion to dismiss, said:
“From plaintiff’s testimony and that of his witnesses, it appears Plaintiff purchased the motel after extensive negotiations and living in the motel for a period of time. The information given to the realtor regarding rental income was evidently ‘blown up’. After extended negotiations, a contract of sale was entered into * *, with the provision that proof of alleged income be made. Defendant sellers consistently, up to just prior to closing, refused to supply any evidence of the supposed past income. Defendants claimed that all the books and records were in the hands of their accountant in another city. Plaintiff attempted then to get permission from Defendants to secure copies of sales tax reports from the Comptroller in order to verify income. This was also refused by Defendants. The records show, without contradiction, that Defendants consistently refused all such proof and indicated that they would continue to refuse, even at the expense of the deal falling through. The Plaintiff persisted in his effort to obtain this information up to the day before the closing when the deal was called off. Later that day, some of the defendants called and offered to show check stubs showing the amount paid to the State for sales tax on rentals, by way of proof of earnings. The stubs were looked at by real estate agent and the Plaintiff, and the amounts verified1 with the ‘blown up’ figures on income. The deal was then closed the next day.
“Taken at its best, Plaintiff has presented a case of material fraud which was relied on and did in fact induce the purchase complained of. On the other hand, Plaintiff’s own testimony presents a case in which Plaintiff had every conceivable notice of the fraud and chose to close the transaction with proof of the fraud before him, as to a part thereof (as to represented advance registrations), and enough evidence of other fraud (represented income) to have warned any reasonable person to have checked further and secure additional proof before closing the transaction. Plaintiff lived at the motel some six to eight weeks prior to the closing. During this time he made every effort to get proof of the income claimed. Defendants consistently evaded giving of proof. Finally Plaintiff wanted access to records he knew were available if Defendants, would consent to his having them, (sales tax records). Defendants refused this request and yet Plaintiff, being denied, without any excuse by Defendants, access to such reports,, blindly went forward in an attempt to-get proof, and finally, at the last minute, claims to have relied on check book stubs, which were not authenticated in any way, to prove to his satisfaction that all was rosy and the deal was entirely as represented. Not only did Plaintiff accept such proof but the next day, upon closing, Defendants furnished a list of advance reservations *47 which disclosed reservations for ‘about four to six people’ when ‘While I was negotiating for this Motel I was told that they were booked solid for the winter season — they were booked for about ten or twelve weeks in advance’. Even with all this he still closed the transaction. Upon closing the transaction the Plaintiff, within about a week, obtained the information on sales tax which he had been refused (he then being the owner, such records became available to him). He subsequently consulted his attorney within the next few weeks and the attorney, for Plaintiff, notified the Defendants of his desire to rescind the latter part of April.
“Under all these circumstances, it appears to the Court that the Plaintiff wanted the motel so badly that he went into the transaction with every warning conceivable being given and notice of fraud apparent to anyone who cared to look.”
In the opinion of the lower court, the case of George E. Sebring Co. v. Skinner, 100 Fla. 315, 129 So. 759, was quoted from as follows:
“While it is true that one cannot by a false representation induce carelessness upon another’s part in the matter of signing papers and then profit by such negligence, the policy of the law is that he who will not .reasonably guard his own interest when he has reasonable opportunity to do so and there is no circumstance reasonably calculated to deter him from improving such opportunity must take the consequences.
“Where there is such inattention amounting to gross carelessness on the one side and misstatement upon the other and but for the former the latter would not be effective and loss occurs to the inexcusably negligent one he is remediless. ‘Not because the wrongdoer can plead his own wrongdoing as an excuse for not making reparation but first, because the consequences are attributable to inexcusable inattention of the injured party and second, because the court will not protect those who with full opportunity to do so will not protect themselves.’ * * * ”
In the case of Fote v. Reitano, Fla.1950, 46 So.2d 891, 893, Justice Roberts, in an opinion for the Court, stated that reliance upon a false representation is an essential element of a cause of action in deceit and that the party seeking to rescind a contract must prove that he was justified in relying upon such false representation.
In the case of Potakar v. Hurtak, Fla.1955, 82 So.2d 502, the Supreme Court of Florida held that a complaint by a purchaser of a restaurant for damages on account of the vendor’s allegedly false representation that restaurant had made a profit in the past was insufficient for failure to disclose falsity of the representation, plaintiff’s .right to rely thereon, and plaintiff’s diligence in investigating facts.
The amended complaint in the Potakar case, supra, alleged that the plaintiff asked the defendant,
“ ‘ * * * [I]f the previous lessees had shown a profit and the defendant did falsely state that the previous occupants and lessees of said business [a restaurant] had made a profit;’ that ‘in fact the defendant had a peculiar knowledge of the facts and knew that the said restaurant had lost money for several years;’ that the representation was made by defendant ‘as agent for and representative of the lessors of the property,’ with the ‘purpose and intent to defraud, deceive and influence the plaintiff to lease’ the property; that plaintiff ‘was not afforded an opportunity to investigate’ the matter, but relied upon the statement and suffered damages by virtue of the fact that ‘the said restaurant was not *48 profitable and liad never been profitable/ ”
The lower court granted a motion to dismiss the amended complaint upon the grounds that the allegations of fraud were not made with sufficient particularity. The Supreme Court, in affirming the lower court, said: '
“23 Am.Jur., Fraud and Deceit, p. 960, Sec. 155, states the general rule as to duty to investigate fraudulent statements. It is there stated: ‘The authorities are well agreed that the principle of right of reliance is closely bound up with a duty on the part of a representee to use some measure of protection and precaution to safeguard his interest. It is well settled, as a broad generalization, that a person to whom false representations have been made is not entitled to relief because of them if he might readily have ascertained the truth by ordinary care and attention, and his failure to do so was the result of his own negligence. Although the authorities are in accord on the abstract proposition that there is no right of reliance if the conduct of the representee constitutes negligence in the premises, under the circumstances of the case, the nature of the transaction and representations, and the situation of the parties, the authorities are not in perfect accord as to the standard by which the conduct of the representee is to be judged. * * A rule which has been approved, and which combines those elements of both the obj ective and subj ective tests which have been stated by the courts enunciating them to be desirable, is that in measuring the right to rely upon representations, every person must use reasonable diligence for his own protection. Under any standard of conduct, and in the absence of accompanying actual deception, artifice, or misconduct, it is well agreed that where the means of knowledge are at hand and are equally available to both parties, and the subject matter is equally open to their inspection, if one of them does not avail himself of those means and opportunities, he will not be heard to say that he was deceived by the other’s misrepresentations. * *
The plaintiffs in McDonald et al. v. Rose et al., Fla.1951, 50 So.2d 878, 880, brought an action for rescission of a contract of sale of an apartment house alleging that defendant-sellers had falsely and fraudulently misrepresented material facts concerning the income, degree of occupancy, furnishings and location of the property. After proof was submitted to the chancellor by both sides the court entered a decree for the defendant-vendors and the vendees appealed. The Supreme Court noted that the pui'chasers had inspected the property some sixty days prior to the purchase and again on the date of closing; that the purchasers resided on the property one week prior to the closing; and that such opportunities for inspection precluded the purchasers from .rescission and cancellation on the ground of misrepresentations as to income, degree of occupancy, furnishings and location of the property. The court concluded the affirmance by stating:
“Restatements of the fraudulent representation do not of themselves constitute concealment, and where a party is once put upon notice of fraud he cannot avoid the consequences of his constructive knowledge of the fraud nor fulfill his duty to investigate by going to the party he suspects of the fraud. lie cannot desist from further investigation because he is reassured of the truth of the original representations.”
The effect of a misrepresentation in regard to a construction contract was presented in Board of Public Instruction of Dade County v. Everett W. Martin & Son, Fla.1957, 97 So.2d 21, 27. The school board brought an action against the build *49 ing contractor for fraud and deceit alleging that the contractor in using a substituted jalousie instead of the type originally called for in the contract, falsely represented to the board that the contractor had paid $20,237 for the substituted jalousies when actually it had paid $10,276 for the substituted jalousies. The contractor had proposed a credit to the board in the sum of $5,186.70 if the substituted jalousies were accepted. The board accepted the credit. The contract between the parties provided that in case of a substitution, if the substituted item was less than the specified item, the board would receive the difference in cost between the two items less ten percent. The board sued for the difference between the amount that the contractor advised the board the substituted jalousies cost and the amount the contractor actually paid for the substitute. The jury found for the defendant and the board appealed.
The Supreme Court held in the Board of Public Instruction case, supra, that in a contractual situation such as presented, the board, its agents and architects were justified in relying upon the .representations of the contractor alleging that he paid a certain sum for the substituted jalousies without having to go to the company which sold the jalousies to the contractor to determine the price actually paid by the contractor. The exigencies of this situation determined the reasonableness of this right to rely upon the representations for the court observed:
“ * * * Any other rule would place a heavy burden on the party having a building constructed. Thousands of items are often purchased by the contractor under a big building construction contract. When numerous items are substituted pursuant to the terms of a contract, certainly the owner and his agent, the architect, should be able to trust the contractor’s statement that he had paid a certain sum for the substituted item, without being negligent in so doing.”
This case, of course, was predicated on a dissimilar factual situation from the instant case and the duty to investigate on the part of the innocent party would accordingly be somewhat different than in situations, such as the instant case, involving an arms length contract of sale of business property.
The case of Welbourn v. Cohen, Fla.App.1958, 104 So.2d 380, presented a situation wherein the plaintiffs sought rescission of a contract of purchase of a truck terminal alleging that defendant-sellers had misrepresented certain facts pertaining to the property and volume of business which had been done in the past. The trial court found that plaintiffs had failed to prove the allegations and entered judgment for the defendants. The plaintiffs had discovered that certain facts in the prospectus were false and had conducted their own investigation prior to the purchase. This court affirmed and held that fraud and misrepresentation, insofar as rescission is concerned, are never presumed from the circumstances but must be established by clear and convincing evidence.
This court, in Mandrachia v. Ravenswood Marine, Inc., Fla.App.1960, 118 So.2d 817, also pointed out the elements that must be plead and proven in order to recover in an action alleging fraud and misrepresentation. It was also stated therein that the .right of reliance is closely bound up with a duty on the part of a rep-resentee to use some measure of protection and precaution to safeguard his interest-. This would be especially applicable in a situation, such as in the instant case, where the purchaser has been put on notice through deceptive acts of the seller that the true facts may be at variance with the .representations made by the seller or his agents.
*50 It is rather significant in this case that the appellant, after learning of the misrepresentation of income one week after the closing date (January 16, 1959), did not put in motion, through channels, action to rescind the contract until April 24, 1959, three months after knowledge of misstatements furnished him. In attempting to answer, he indicated that the three months, including February and March, were the most profitable months of the year’s operation for the motel, so instead of acting within a reasonable time for rescission he sought to wait until a further three months’ operation of the motel which would indicate whether or not he had made a satisfactory bargain in the purchase.
We find sufficient evidence in this record to sustain the lower court.
Affirmed.
KANNER, J., and SMITH, CULVER, Associate Judge, concur.