349 So.2d 1205 (1977)
Willis N. BUTTS and Elizabeth L. Butts, His Wife, Appellants,
v.
John A. DRAGSTREM and Janet K. Dragstrem, His Wife, Appellees.
No. DD-90.
District Court of Appeal of Florida, First District.
September 13, 1977.
Rehearing Denied October 14, 1977.
William H. Maness, Jacksonville, for appellants.
Keith Watson and John G. Barry, III of Newton & Watson, Jacksonville, for appellees.
*1206 ERVIN, Judge.
The Butts appeal a judgment entered in favor of Mr. and Mrs. Dragstrem for $42,000.00. They urge that the lower court erred in denying their motion for directed verdict on the ground that John Dragstrem was not justified in relying upon certain fraudulent representations made by Willis Butts which were material in the Dragstrems' decision to purchase Butts' trailer park. We agree and reverse.
In early 1973, John Dragstrem visited his brother, Wayne, who at the time managed a seventeen unit mobile home subdivision in Jacksonville, Florida, which was owned by Butts. Dragstrem had in Illinois operated a small apartment building for seven years and was experienced in the maintenance and upkeep of rental property. He advised his brother he was interested in purchasing rental property which would net him at least $1,000.00 per month. His brother consulted Mr. Butts concerning the possibility of Dragstrem's purchasing the property. Butts evinced interest, advising Wayne that his brother could easily make $1,000.00 per month net income, saying he had made at least that much per month for several years in the past.
Between February and October, 1973, Dragstrem spent a considerable portion of his time in the Jacksonville area. He socialized with Butts and his wife and saw them frequently in church. Butts appraised his own property, based upon his thirty years experience in the rental of mobile homes, at $167,000.00, but told Dragstrem he would sell the subdivision to him for $147,000.00. Although Dragstrem was never shown Butts' books of account, he was given a pink slip listing average monthly expenses of $249.00, of this amount $30.00 was allocated to "maintenance and upkeep: mower; minor maintenance on mobile homes and street." Butts represented these figures as accurate. Dragstrem, relying on Butts' representations as a Christian brother and on Butts' reputation for honesty agreed to purchase the property for $145,000.00.
After purchasing the property, Dragstrem soon realized that he was unable to make anywhere near the $1,000.00 per month net income Butts had claimed to have made. After the contract to buy and sell was signed, Dragstrem came upon the premises and found there the ledger book maintained by Butts. It reflected during a period of 15 months gross income of $31,945.00. It did not, however, show the expenses involved.
At a deposition of Butts' accountant, taken three weeks prior to trial, Dragstrem learned for the first time that Butts' net monthly income, after subtracting expenses and mortgage payments, was $540.00 per month. At trial Dragstrem testified that following the purchase, his average net monthly income was $490.00. The accountant for Butts, one Rudolph Black, testifying on behalf of Butts, did not substantially contradict the testimony of Dragstrem. He testified the total gross income for fifteen months was $32,938.04, excluding rental deposits. Total expenses, excluding mortgage payments, for the same period were $7,190.00. Net monthly expenses during the 15 months were $480.00, which contrasted sharply with the average monthly figure of $249.00 supplied by Butts to Dragstrem on the pink slip.
At the outset we conclude there was ample evidence in support of the conclusion that Butts fraudulently misrepresented the average monthly net income he derived from his business. In general, misrepresentations as to past income  as opposed to probable future profits  are proper predicates for alleging fraud.[1] Dragstrem was required, however, to prove also that he relied upon the representation resulting in his injury, which representation was a material fact in inducing the purchase[2] *1207 and that he was justified in relying upon the truth of the statement.[3] The right of reliance is also closely bound up with a duty on the part of the representee to use some measure of protection and precaution to safeguard his interests.[4] His justifiable reliance goes to the heart of the problem. In the absence of a showing of a fiduciary or confidential relationship, if there is no accompanying actual deception, artifice, or misconduct, where the means of knowledge are at hand and are equally available to both parties and the subject matter is equally open to their inspection, one disregarding them will not be heard to say that he was deceived by the other's misrepresentations.[5]
Thus it was necessary for Dragstrem to avail himself of an opportunity to inspect Butts' books. True, Dragstrem testified he asked to see the books and, according to Dragstrem's testimony, Butts replied he would bring them over in the morning, but the morning never came. Later after the purchase was consummated, the books of account containing only items of income were found upon the premises. Before the sale, however, Dragstrem was advised the name of Butts' bookkeeper yet he made no attempt, until three weeks prior to trial, to ascertain from the accountant what Butts' expenses had been. If there was evidence of active concealment by Butts of his books then a different result might well obtain. There is no such evidence here. We have previously held that where a vendor by his actual deception or misconduct conceals the evidence of a defective condition in such a way as to render it incapable of detection from a reasonable and ordinary inspection, the vendor can no longer rely upon the purchaser's duty to inspect because such conduct by the vendor serves to impair the purchaser's opportunity to make a meaningful inspection.[6]
While Dragstrem had never operated a mobile home park before the purchase, he was not an inexperienced man of business. He had for seven years maintained a small apartment building in Illinois and was thereby not unaware of the attendant problems associated with the maintenance and upkeep of rental properties. There were certain avenues of inquiry which this record does not show Dragstrem pursued. In addition to his failure to consult Butts' accountant, Dragstrem could also have directed appropriate inquiries to his brother concerning what knowledge, if any, he had concerning the income and operational expenses of the subdivision.
It appears Dragstrem's primary justification for his reliance upon Butts' representations was owing to their close personal friendship and mutual religious interests. Unfortunately for Dragstrem's position such a relationship does not create a fiduciary or confidential relationship. True, the relation and correlative duties necessary to give rise to such status need not be legal but may be moral, social, domestic or merely personal.[7] But close friendship is not enough to sustain Dragstrem's action. In refusing to rescind a deed from a mother-in-law to a son-in-law, conveyed to him following his false representations that he would care for her the remainder of her life or so long as she remained a single woman, our Supreme Court stated, "[t]he law does not prohibit contracts entered into upon the *1208 basis of mutual confidence and friendships."[8]
Having considered the record before us we determine that Dragstrem had a duty to make a reasonable inquiry of the seller's operational expenses. His casual request to Butts for his books did not discharge this burden. He knew the name of Butts' accountant, yet it was only after the action was filed and three weeks prior to the date of trial that he asked any questions as to the expenses incurred by Butts in the operation of the mobile home park. While it may have required a bit more persistence by Dragstrem to ascertain the truth, there is nothing before us indicating he could not have acquired the requisite knowledge by the exercise of ordinary care. On the facts before us we conclude his failure to discover the truth is attributable to his own negligence.
The lower court erred in denying Butts' motion for directed verdict. The judgment is reversed.
RAWLS, Acting C.J., concurs.
SMITH, J., dissents.
SMITH, Judge, dissenting:
In my view the trial court properly concluded that the evidence presented a jury question on the pertinent issues. Butts misrepresented his average monthly expenses at a precise $249.00. Even assuming that inspection of Butts' books of account was reasonably required of Dragstrem as a matter of law, Dragstrem's persistence in his request for inspection would have been unavailing because, as the majority opinion recognizes, the books contained no information inconsistent with Butts' misrepresentation of expenses. I do not conceive that we are justified in imposing on Dragstrem a duty to interview Butts' accountant in order to verify information so explicitly misrepresented. Board of Pub. Instr. of Dade Co. v. Everett W. Martin & Son, Inc., 97 So.2d 21 (Fla. 1957). To so hold as a matter of law imposes an incalculable burden on a prospective purchaser and reduces the seller's precise misrepresentation of facts to the legal insignificance of puffery. The question was one for the jury under proper instructions, concerning which Butts has demonstrated no error. I would affirm.
NOTES
[1] Oceanic Villas, Inc. v. Godson, 148 Fla. 454, 4 So.2d 689 (1941).
[2] Citizens' State Bank v. Jones, 100 Fla. 1492, 131 So. 369 (1930).
[3] Morris v. Ingraffia, 154 Fla. 432, 18 So.2d 1 (1944).
[4] Kaminsky v. Wye, 132 So.2d 44 (Fla. 2nd DCA 1961).
[5] Farnham v. Blount, 152 Fla. 208, 11 So.2d 785 (1942); Beagle v. Bagwell, 169 So.2d 43 (Fla. 1st DCA 1964).
[6] Beagle v. Bagwell, 215 So.2d 24 (Fla. 1st DCA 1968).
[7] Dale v. Jennings, 90 Fla. 234, 107 So. 175 (1925).
[8] Smith v. Curtis, 19 Fla. 786, 799 (1883).