**OLD SECURITY LIFE INSURANCE COMPANY et al., Plaintiffs,**

v.

**George WAUGNEUX, etc., et al., Defendants.**

**No. 77–6155–CIV–JAG.**

United States District Court, S. D. Florida, Fort Lauderdale Division.

Feb. 25, 1980.

Paul & Thomson, P. A., Parker D. Thomson, Miami, Fla. by Jon W. Zeder, James E. McDonald, Marshall R. Burack, Miami, Fla., for plaintiffs.

Klein, Oshinsky & Solomon, Hallandale, Fla., for defendant Joann Hays by Mitchell D. Klein, Hallandale, Fla.

Abrams, Anton, Robbins, Resnick, Schneider & Mager, P. A., by Gary M. Farmer, Hollywood, Fla., for defendant Golding.

Floyd, Pearson, Stewart, Richman, Greer & Weil by James B. Tilghman, Jr., Miami, Fla., for defendant Stolpen.

## ORDER

GONZALEZ, District Judge.

THIS CAUSE is before the court on the Motion to Dismiss Count II of the Second Amended Complaint of the Defendants Golding, Hays, and Stolpen; and Stolpen's Motion to Dismiss Count I.

The gravamen of the Second Amended Complaint is that "Farmers National (Life Insurance Company) acting at the insistence of and behalf of, aided and abetted by, and in conspiracy with Defendants Waugneux, Sage, National Financial (Agency, Inc.), and Hauser assigned to Old Security two notes which previously had been assigned to Farmers National . . . and the mortgages securing payment of the respective notes." (Second Amended Complaint ¶ 14) Each note was payable to National Financial and was secured by a mortgage encumbering recreational facilities at a condominium development in Hallandale, Florida. The notes and mortgages were assigned by National Financial to Farmers National. Pursuant to a Reinsurance Agreement, Farmers National assigned the notes and mortgages to Old Security. Plaintiffs allege, *inter alia*, that the signatures on one of the notes and mortgages were forged and falsely notarized; that the defendants made false representations of the rental income generated by the recreation leases; that false satisfactions of both notes and mortgages were recorded; and that on the date of the assignment to Old Security there existed an unsatisfied prior lien against the property encumbered by one of the mortgages.

Count II of the Second Amended Complaint alleges a violation of the anti-fraud provisions of the Securities Act of 1933, 15 U.S.C. § 77q(a); the Securities Exchange Act of 1934, 15 U.S.C. § 78a et seq.; and Rule 10B–5 thereunder. Plaintiffs assert that the two notes and two mortgages were "securities" when assigned pursuant to a Reinsurance Agreement under which Old Security was to hold required reserves.

The question before the court is whether Congress intended the Securities Acts to cover a reinsurer's assignment of a note and mortgage as part of the required reserves it contracted to transfer to the insured.

After carefully considering the arguments, the court concludes that the subject notes and mortgages are not "securities" within the meaning of the Federal Securities Acts.

"The starting point in every case involving construction of a statute is the language itself." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). The definitional section of the 1933 Act provides that "unless the context otherwise requires . . . the term 'security' means any note . . . ." 15 U.S.C. § 77b(1).[1] Although "any note" is

---

1. It is settled that the definition of the term "security" under the Securities Exchange Act, 15 U.S.C. § 78c(a)(10) is virtually identical to the meaning under the Securities Act, 15 U.S.C. § 77b(1). Hence, the coverage of the two Acts is treated as the same. *Teamsters v. Daniel*,

literally within the purview of the Acts, it is well established that it is the substance not the form of the transaction that determines whether a given note is a security. *Teamsters v. Daniel*, 439 U.S. 551, 558, 99 S.Ct. 790, 795, 58 L.Ed.2d 808 (1979); *United Housing Foundation, Inc. v. Forman*, 421 U.S. 837, 848, 95 S.Ct. 2051, 2058, 44 L.Ed.2d 621 (1975); *Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967); *SEC v. W. J. Howey Co.*, 328 U.S. 293, 298, 66 S.Ct. 1100, 1102, 90 L.Ed. 1244 (1946).

The court is guided by the economic realities of the transaction and the purpose of the Securities Acts which

"was to eliminate serious abuses in a largely unregulated securities market. The focus of the Acts is on the capital market of the enterprise system: the sale of securities to raise capital for profit-making purposes, the exchanges on which securities are traded, and the need for regulation to prevent fraud and to protect the interest of investors." *Forman*, 421 U.S. at 849, 95 S.Ct. at 2059.

The parties have directed the court's attention to what is termed the "commercial-investment dichotomy." This test restricts the coverage of the Federal Securities Acts to notes which are in the nature of an investment; notes retaining a commercial character are excluded. *National Bank of Commerce v. All American Assurance Co.*, 583 F.2d 1295 (5th Cir. 1978); *McClure v. First National Bank*, 497 F.2d 490 (5th Cir. 1974), *cert. denied*, 420 U.S. 930, 95 S.Ct. 1132, 43 L.Ed.2d 402 (1975); *Bellah v. First National Bank*, 495 F.2d 1109 (5th Cir. 1974). See Annot. 39 A.L.R.Fed. 357 (1978) for a comprehensive analysis of the "commercial-investment dichotomy".

The distinction between commercial and investment notes is predicated on the Acts' purposes of protecting investors and the practical considerations of subjecting commercial notes to the registration provisions of the federal securities laws. *Zabriskie v.*

*Lewis*, 507 F.2d 546 (10th Cir. 1974). It is fundamental that the spirit of the Acts, not whether the transaction falls into a neatly defined category, provides the context for the court's analysis.

The assignment of the two notes and mortgages herein was made under the provisions of a Reinsurance Agreement. The Agreement provides in pertinent part:

" . . . the Company (Old Security) will hold all necessary policy reserves on behalf of the Reinsurer (Farmers National). These reserves will be held in a separate account and invested (in Company's name) as directed by the Reinsurer in investments which are acceptable as proper investments under the insurance laws of the states which this agreement includes. . . .

Quarterly, the Ceding Company will make an accounting of said invested reserves to the Reinsurer and interest earned in excess of statutory requirements shall be paid to the Reinsurer provided all reserve requirements have been met."

Plaintiffs contend that because the Reinsurance Agreement provides that the required reserves were to be invested, by definition this is an investment transaction. This reasoning is erroneous on two grounds. First, the characterization of the transaction, although a factor, is not determinative. It is the economic realities of the particular transaction in conjunction with the Acts' purposes of protecting investors that controls. Second, the Reinsurance Agreement calls for the assignor of the notes, Farmers National, to direct the making of the subsequent investments. This renders inapplicable those decisions protecting parties who have invested "in a common venture premised on a reasonable expectation of profits to be derived from the entreprenurial or managerial efforts of others." *Forman*, 421 U.S. at 852, 95 S.Ct. at 2060. The absence of this essential attribute of a security is a further indication that the

439 U.S. 551, 556 n.7, 99 S.Ct. 790, 795, 58 L.Ed.2d 808 (1979); *United Housing Foundation v. Forman*, 421 U.S. 837, 847 n.12, 95 S.Ct.

2051, 2058, 44 L.Ed.2d 621 (1975); *Tcherepnin v. Knight*, 389 U.S. 332, 342, 88 S.Ct. 548, 556, 19 L.Ed.2d 564 (1967).

instant transaction is not within the Acts' intent. See *id.* at 852, 95 S.Ct. at 2060. See also *Oliver v. Bostetter*, 426 F.Supp. 1082, 1085–86 (D.Md.1977) (the *Howey* analysis determines whether a particular note is a security).

■ The court agrees with plaintiffs' contention that this transaction is not the typical commercial loan made by a lender in the ordinary course of its business. It does not follow, however, that a transaction which is not an ordinary commercial loan must be—by definition—an investment transaction. To adopt such a proposition would be to undermine the flexibility required in interpreting the federal securities laws. The instant transaction is really a hybrid, not falling within either category.

The issue remains: Did Congress intend the Acts to apply to the transfer of required reserves under this Reinsurance Agreement?

To hold that the transfer of required reserves is within the scope of the federal securities laws, would subject this transaction to the Acts' registration provisions.

"Registration is a costly procedure, both temporally and financially speaking. Subjection of loan transactions involving a promissory note to the registration requirements would inevitably wreak havoc on the commercial paper market. We have grave doubts that such a result was sought by Congress. (In addition) the Securities Act of 1933 and the Securities Exchange Act of 1934 create for participants in note transactions a broad but nevertheless not boundless federal forum for vindicating their grievances." *Bellah*, 495 F.2d at 1114.

■ Accordingly, the court finds that the transfer of these two notes and mortgages was not, in this context, an investment transaction under the Acts. These notes and mortgages are not "securities" within the meaning of the federal securities laws.

The remaining issue before the court concerns defendant Stolpen's Motion to Dismiss Count I of the Second Amended Complaint. Defendant contends that plaintiffs have failed to meet the requirements of Rule 9(b), Fed.R.Civ.P., and have further failed to state a claim upon which relief can be granted.

■ The court finds that Count I of the Second Amended Complaint meets the pleading requirements of Rule 9(b). The circumstances constituting defendant Stolpen's alleged fraudulent conduct are clearly set forth. Plaintiffs allege that Stolpen prepared the notes and mortgages as well as the satisfactions thereon; and that he delivered the notes and mortgages to Old Security knowing that they had been previously satisfied of record. (Second Amended Complaint ¶¶ 27, 29). These allegations of Stolpen's fraudulent conduct are *inter alia* within Rule 9(b)'s requirement that fraud be plead with particularity.

■ Stolpen further submits that Count I should be dismissed in that an action for fraud will not lie where the relevant means of knowledge is readily available and open to the complaining party but remains unused—unless the defendant occupied some confidential or fiduciary relationship to the plaintiff, or employed some trick or artifice to persuade or prevent the plaintiff from investigating. (Defendant's Memo at 2).

This proposition has been seriously questioned by Florida courts which have recognized the trend that "negligence in trusting in a misrepresentation will not excuse positive wilful fraud or deprive the defrauded person of his remedy. Especially where there is a relation of natural trust and confidence, although not strictly a fiduciary relation, the failure of the defrauded party to exercise ordinary prudence or vigilance will not deprive him of redress." 12 Williston on Contracts § 1515B (3d ed. 1970). See *Board of Public Instruction v. Everett W. Martin & Son, Inc.*, 97 So.2d 21 (Fla. 1957); *Upledger v. Vilanor, Inc.*, 369 So.2d 427 (Fla. 2d DCA 1979); *Martin v. Paskow*, 339 So.2d 266 (Fla. 3d DCA 1976), *cert. denied*, 348 So.2d 951 (Fla.1977).

It is accordingly,

ORDERED AND ADJUDGED as follows:

1. That Defendants' Motion to Dismiss Count II of the Second Amended Complaint be and the same is hereby GRANTED.

2. That Defendant Stolpen's Motion to Dismiss Count I of the Second Amended Complaint be and the same is hereby DENIED.

3. That Defendants will be allowed 10 days from the date of this Order within which to Answer.