Cesar O. CASIELLES, Plaintiff-Appellant-Cross Appellee,

v.

TAYLOR ROLLS ROYCE, INC., a Florida Corporation, formerly known as Taylor Imported Motors, Inc., a Florida Corporation, Defendant-Appellee-Cross Appellant.

No. 80–5032.

United States Court of Appeals, Fifth Circuit. Unit B

May 21, 1981.

Freidin & Silber, Norman J. Silber, Miami, Fla., for plaintiff-appellant-cross appellee.

Patrick J. Casey, West Palm Beach, Fla., for defendant-appellee-cross appellant.

Before TUTTLE, RONEY and VANCE, Circuit Judges.

RONEY, Circuit Judge:

This diversity case involves a dispute over the cost of repairs on plaintiff's Rolls Royce automobile. Faced with a $24,000 bill for repairs he thought would run about $7,000, Cesar O. Casielles refused to pay the bill, deposited a cash bond as security for the return of his car, and sued for compensatory and punitive damages in four counts: breach of express contract, violation of the Florida Deceptive and Unfair Trade Practices Act, fraud and misrepresentation, and conversion. The repairman counterclaimed alternatively for quantum meruit and oral contract damages. The district court after a bench trial decided against the plaintiff and awarded the defendant some $11,000 for the repairs. Plaintiff appeals and defendant cross-appeals the amount of the judgment. While the district court misconstrued the applicable Florida law, it reached the correct result in this case and we therefore affirm.

The facts are somewhat unique and are important to the decision. Plaintiff, Cesar Casielles, is a citizen and resident of Venezuela. Defendant, Taylor Rolls Royce, Inc., is a Florida corporation which specializes in the repair and servicing of Rolls Royce automobiles.

In early October 1977, John Pegg, defendant's service director, traveled to Venezuela at the request of a Rolls Royce dealership located in Caracas to examine and estimate the cost of repairs on two Rolls Royces. While in Caracas, Pegg also examined plaintiff's Rolls Royce, which had recently been involved in an accident. He spoke with plaintiff on several occasions about the contemplated repairs. They conversed through an interpreter, since Pegg does not speak Spanish and plaintiff speaks little English. Pegg then prepared a written estimate of the cost of repairs on plaintiff's car.

Exactly what the estimate covered is hotly disputed by the parties and is not altogether clear from the face of the document. The parties agree it was at least intended to cover certain costs of body work and painting. There is considerable disagreement, however, on whether it also included the costs of a "complete mechanical," that is, repairs necessary to correct any mechanical problems. The total cost of repairs as listed on the estimate was approximately $6,800.

Prior to Pegg's departure from Venezuela, plaintiff did not expressly indicate he would ship the car to defendant for the repairs, although he did ask Pegg for shipping information. Plaintiff later decided to have the repairs made. On or about Octo-

ber 25, he shipped the car to the United States, and it arrived at defendant's body shop facility in West Palm Beach, Florida, on November 4.

Plaintiff visited defendant's facility later in November, before any repairs had been made. He engaged in further discussions with Pegg and other employees of defendant about the work to be done. Plaintiff concedes he told Pegg at this time "to fix everything that was wrong with the car," although he argues such work was covered by the previous written estimate. During the course of repairs, plaintiff visited defendant's facility on two more occasions, in March and June 1978.

Work was completed in July 1978. When plaintiff arrived to pick up the car in August, he was presented with a lengthy invoice and a bill for nearly $24,000. Plaintiff refused to pay the bill and commenced this action. The car was returned to plaintiff in March 1979, after he deposited a cash bond as security for the mechanic's lien filed by defendant.

Plaintiff claimed defendant violated the Florida Deceptive and Unfair Trade Practices Act, Fla.Stat.Ann. §§ 501.201 et seq. (1966), and the administrative rules thereunder; breached an express contract for repairs; and engaged in fraud and breach of fiduciary duty. Finding against plaintiff on all claims, the district court awarded defendant on its counterclaim $11,000 as the reasonable value of the work on plaintiff's car based on an implied rather than an express contract.

We discuss the points on appeal seriatum.

1. *Florida Deceptive and Unfair Trade Practices Act*

The district court held the Florida law which regulates automobile repairmen inapplicable to vehicles owned by nonresidents and licensed out-of-state. The Florida Deceptive and Unfair Trade Practices Act, enacted in 1973, declares illegal "unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla.Stat.Ann. § 501.204 (1980). It expressly delegates rulemaking authority to the Florida De-

partment of Legal Affairs. Fla.Stat.Ann. § 501.205. Pursuant to this authority, the Department promulgated rules applicable to "Motor Vehicles, Sales, Repairs, Maintenance and Service." Rules of the Department of Legal Affairs, Ch. 2–19 (1974) (hereinafter "Rules"). Violations of these Rules are deemed unfair trade practices, for which relief may be sought in private actions. Fla.Stat.Ann. § 501.211.

The Rules define a motor vehicle as an automobile "required to be licensed under Chapter 320, Florida Statutes, for operation over the roads of Florida." Rule 2–19.01(1). The district court concluded this rule excluded vehicles owned by nonresidents, apparently on the ground that such vehicles are not required to be licensed by Chapter 320 for operation in Florida.

■ The provision in Chapter 320 to which the court referred is section 320.37, which provides:

The provisions of this chapter relative to registration and display of license number plates shall not apply to a motor vehicle owned by a nonresident of this state, ... *provided, that the owner thereof shall have complied with the provisions of the law of the foreign country*, state, territory or federal district of his residence, *relative to motor vehicles and the operation thereof*, and shall conspicuously display his registration number as required thereby .... (emphasis supplied)

This section plainly requires automobiles owned by nonresidents to be licensed for operation within the state. It provides only that *Florida* licensing is not required if the owner has properly registered the vehicle elsewhere. Therefore, an automobile owned by a nonresident and licensed out-of-state falls within the definition of a "motor vehicle" under Rule 2–19.01(1). The district court erred in holding the Rules inapplicable for failure of plaintiff's car to meet this definitional requirement.

■ Upon examination of the Rules violations alleged by plaintiff, however, it appears he cannot prevail on this claim. Plaintiff first contends the extent and cost

of the repairs greatly exceeded the written estimate proposed by Pegg in Venezuela, in violation of Rule 2–19.02(1). This rule generally provides an auto repairer shall not exceed the estimated price by more than ten percent without the oral or written consent of the owner. Even assuming this rule applies to a written estimate prepared and submitted in Venezuela, the estimate given to plaintiff was no longer in effect by the time he delivered the car to defendant. Rule 2–19.02(1) provides a written estimate shall be valid for a period of five days after it is submitted to the customer. Plaintiff did not agree to have the work done within five days of the estimate. He did not ship the car to defendant until about three weeks later. Although plaintiff argues that defendant's acceptance of the car for repair should be considered an implied agreement to abide by the previous estimate, his statements during his visits to defendant's facility indicate he gave his consent to the work that was ultimately performed. Defendant therefore did not violate Rule 2–19.02(1).

Plaintiff next contends the invoice contained numerous overcharges and other errors in violation of the Rules. Without reviewing the evidence in detail here, it appears there were indeed some errors in the invoice, perhaps not unusual in light of the extent of the work performed and the number of charges listed. Such errors, however, were more than adequately corrected by the district court, which fixed the value of the repairs at less than half that claimed by defendant in the original bill.

The remaining violations of the Rules alleged by plaintiff generally involve misrepresentations made by defendant. The district court held defendant did not make such false representations. Upon review of the record, we hold the court did not err in reaching this conclusion.

### 2. Breach of Express Contract

Plaintiff contends the written estimate formed an express contract between the parties, which defendant breached by exceeding the estimated price. The district court rejected this claim, holding the estimate given by Pegg was not an offer and plaintiff's statements and actions did not constitute an acceptance. It instead held only an implied contract existed by which plaintiff agreed to pay for the reasonable value of the services.

Whether the parties have entered into a contract is an issue of fact. The district court's resolution of this issue will be upheld unless shown to be clearly erroneous. *Gibson & Odom Electric Co. v. R. F. Ball Construction Co.*, 368 F.2d 182 (5th Cir. 1966). *See also Coastland Corp. v. Third National Mortgage Co.*, 611 F.2d 969 (4th Cir. 1979); *Arnold Palmer Golf Co. v. Fuqua Industries, Inc.*, 541 F.2d 584 (6th Cir. 1976). In this case, there was no evidence the estimate was intended as an offer by defendant to enter into an express contract. The court could reasonably find the estimate was just that, an estimate, and not a binding offer to make the repairs or make them at the estimated price. *Cf. Orbit Construction Co. v. Trail Development Corp.*, 198 So.2d 341 (Fla.Dist.Ct.App.1967) (estimate not binding contract, because of lack of mutuality and definiteness). Neither do plaintiff's statements and actions indicate an acceptance of the alleged offer. He concedes he did not specifically agree to have the repairs made at the time the estimate was prepared. While he eventually shipped the car to defendant, his later discussions with Pegg at defendant's facility in Florida could be construed as an approval of work beyond that authorized in the estimate, and not merely an acceptance of the written estimate's terms. The district court's finding that an implied rather than an express contract existed is not clearly erroneous.

Because we uphold the district court's finding that the written estimate was not an express contract, we need not consider plaintiff's further contention that its terms were improperly varied by parol evidence.

### 3. Other Errors Alleged

The additional errors asserted by plaintiff may be disposed of without extensive dis-

cussion. Plaintiff challenges the district court's rejection of his fraud claim. The misrepresentations he asserts as fraud, however, are essentially those previously alleged to be violations of the Florida Rules concerning auto repairs. As noted above, the district court held there were no such false representations and the evidence supports this conclusion.

■ Plaintiff also contends the court erred in finding no fiduciary relationship existed between him and defendant's agents. Under Florida law, a fiduciary relationship is established where confidence is reposed as a result of the position of superiority and influence held by the fiduciary. *Prescott v. Kreher*, 123 So.2d 721, 727 (Fla. Dist.Ct.App.1960). *See also Butts v. Dragstrem*, 349 So.2d 1205 (Fla.Dist.Ct.App. 1977); *Harrell v. Branson*, 344 So.2d 604 (Fla.Dist.Ct.App.1977). The evidence in this case does not indicate there was anything more than an arm's length relationship of the type that normally exists between a vendor and a vendee. Plaintiff, a successful civil engineer with experience in financial matters, has failed to establish any special conditions of trust and influence which would support a finding of a fiduciary relationship.

Plaintiff's final contention is that the district court abused its discretion in excluding testimony of one of his witnesses. The witness, Israel Gonzalez, sought to testify about a conversation he had with Pegg in Venezuela. The testimony was intended to show that an oral estimate for a complete mechanical Pegg claimed to have given to plaintiff was in fact given to Gonzalez for repairs on his Rolls Royce. The court disallowed the testimony as hearsay because Pegg's statements to Gonzalez were made through an interpreter. The court reasoned that while Pegg's statements may have been an exception to the hearsay rule as admissions against interest, the interpreter's statements to Gonzalez relating what Pegg told him did not fall within any hearsay exception.

■ We need not decide whether the testimony was properly excluded as hear-

say, because any error was harmless. As held above, the district court properly found an implied rather than an express contract existed. The measure of payment under an implied contract is the reasonable value of the services rendered. *Dean v. Blank*, 267 So.2d 670 (Fla.Dist.Ct.App.1972). Therefore, testimony concerning the actual amount of the oral estimate given by Pegg is immaterial in the ultimate determination of the value of the services. *Solutec Corp. v. Young & Lawrence Associates, Inc.*, 243 So.2d 605 (Fla.Dist.Ct.App.1971).

### 4. The Cross-Appeal

The sole argument offered by defendant in its cross-appeal is that the amount of $5,000 fixed by the court as the reasonable value of the complete mechanical is clearly erroneous. Defendant contends the award should have been approximately $14,000. It recognizes, however, the heavy burden it faces in seeking to overturn the trial court's finding of fact. *See, e. g., United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948); *Causey v. Ford Motor Co.*, 516 F.2d 416, 420 (5th Cir. 1975).

■ The accuracy of the invoice and the work orders was examined in detail in the depositions and at trial. The evidence is at best conflicting. Some errors were in fact conceded and many more were alleged. In fixing the value of the complete mechanical at $5,000, the district court apparently took into account the conflicting testimony and the disputed errors. Upon review of the evidence, we hold the court's award was reasonable. Defendant therefore has not met its burden of showing it to be clearly erroneous.

In conclusion, we note this case reflects an unfortunate but all too common situation, where a customer who has not precisely indicated what repairs are desired and has not obtained a clear agreement as to the price is surprised by a higher bill then anticipated. The case here is unique only in its international flavor and in the rather breathtaking size of the original bill. Flori-

da recently enacted the Motor Vehicle Repair Act, Fla.Stat.Ann. §§ 599.901 *et seq.* (1981), which appears to establish stricter standards for automobile repair shops, particularly in the preparation of and adherence to written estimates. On the facts of this case and in light of the law in effect at the time of the repairs, however, we cannot say the district court reached an incorrect result.

AFFIRMED.