JAMES HANLEY, *Appellant*, v. D. W. BULLARD AND HIS WIFE, LOUIDA C. BULLARD, *Appellees*.

Opinion Filed October 19, 1920.

1. The five days' notice of a motion to strike certain parts of an answer in chancery, deemed to be insufficient, as provided under Chapter 6907, Laws of 1917, may be waived by the party the sufficiency of whose answer is being thus tested by appearing and arguing upon the merits of the motion and by failure to make objection as to the sufficiency of notice at the proper time.

2. In a suit to enforce a mortgage lien upon land to secure the purchase price of the lands and certain live stock an answer which undertakes to set up the defense of failure or partial failure of consideration of the notes which the mortgage was given to secure, by averring that the complainant did not at the time of the sale own a "great portion" of the live stock, is insufficient where the answer fails to aver in which manner and to what extent the defendant has suffered damage by such averred failure of consideration.

3. Fraud averred to have been practiced by complainant in securing a mortgage lien is without merit as a defense to a

foreclosure of the lien where no injury or damage to the defendant is shown to have resulted to him from such averred fraud.

4.  Where a mortgage is given to secure the payment of three promissory notes and the provisions of the mortgage clearly show that it was the intention of the parties that the mortgagee should have the privilege of electing to treat the entire debt as due upon the failure of the maker of the notes to pay the first or second note at maturity, the omission of the letter "s" from the word "note" appearing in the clauses referring to the indebtedness which the mortgage was given to secure will not defeat the mortgagee's right under the mortgage to foreclose it for the entire debt upon the failure of the maker to pay the note first becoming due.

An Appeal from the Circuit Court for Hillsborough County; F. M. Robles, Judge.

Decree reversed.

*Hilton S. Hampton,* for Appellant;

*Sparkman & Knight,* for Appellees.

ELLIS, J.—James Hanley brought suit to enforce a mortgage lien upon certain lands in Hillsborough County against D. W. Bullard and wife. The debt secured by the mortgage was twenty-four hundred dollars, evidenced by three promissory notes of eight hundred dollars each, dated September 20, 1917. One note payable one year after date, one two years after date, and one three years after date. Each note contained a clause in which the maker, D. W. Bullard, agreed to pay a reasonable attorney's fee if it became necessary to collect the note through an attorney. D. W. Bullard and

his wife executed a mortgage in due form to secure the payment of the notes as they became due. The parties used a "printed form" of mortgage and filled in the blank spaces with a typewriting machine where necessary.

The proviso was in the following language: "Provided always and these presents are upon this express condition, that if the said parties of the first part, their heirs, executors or administrators shall pay to the said party of the second part, his executors, administrators or assigns *three* certain promissory note of even date herewith," etc.

In this connection the word "note" instead of notes is used. Wherever the indebtedness is referred to in this peculiarly worded document the word "note" instead of "notes" is used. "And until the payment of said 'note' they shall pay all taxes," etc. The said parties of the first part for themselves, etc., "do promise, covenant and agree to pay to the said party of the second part, his executors, administrators or assigns the said sum of money and interest as mentioned in said promissory *note*," etc.; "and if default shall be made in the payment of the said sum of money or any part thereof as provided in the said "note," or if the interest that may become due thereon or any part thereof shall be behind and unpaid for the space of thirty days then and from thenceforth it shall be optional with the said party of the second part, his executors, administrators or assigns to consider the whole of said principal sum expressed in said 'note' as immediately due and payable." The parties of the first part were to pay all taxes, assessments, insurance premiums that may be imposed upon the premises, to pay all costs, charges and expenses in collecting the moneys secured, including reasonable attorney's fees, etc., "and

any and all moneys paid out by the said party of the second part by reason of the default of the parties of the first part to pay the moneys so stipulated, shall draw interest at the same rate as the promissory 'note' aforesaid," etc.

The bill was filed on March 26th, 1919, six months after the first of the three notes became due. The bill alleged that the note was unpaid and payment had been demanded, that the complainant had elected to consider the whole of the indebtedness as immediately due and payable, and prayed that the court order and decree that the defendants do pay or cause to be paid to the complainant in a short time to be fixed by the court "the amount so found to be due for principal, interest and a reasonable solicitor's fee" for complainant's solicitor, and upon the defendants' failure to "comply with the terms of the decree" that the mortgaged premises be sold, etc. There was a prayer for general relief.

The defendants answered the bill, denying their indebtedness to the complainant and averring that the complainant had deecived them in a trade whereby they had become the purchasers of complainant's land and transferred to him their property, and that because the complainant had misrepresented the ownership and value of the live stock and farm implements which he agreed to sell and transfer to the defendants with the land, the defendants did not deem the indebtedness to be valid nor the mortgage enforceable. They also denied that under the terms of the mortgage the complainant was not "entitled" "to claim the entire amount thereby secured as due and owing at the time of filing said bill of complaint." The answer prayed that the notes and mortgage be delivered up to be cancelled and that an account be

taken between the complainant and defendants and the valuation of the property represented by complainant be ascertained and the portion thereof that he falsely represented that he owned be deducted from the amount that may be found to be due from the defendants, if any.

The complainant filed two exceptions to the answer upon the grounds of impertinence. The first embraced all that part of the answer in which the defendants set up the misrepresentations made by the complainant as to the live stock and equipment with which the lands of the complainant were represented by him to be supplied, and the second exception embraced that portion of the prayer of the answer that the notes and mortgage be delivered up to be cancelled.

The Chancellor overruled the firt exception and sustained the last, stating in his order that the mortgage could only be foreclosed for the *"note" now due.* The order was made October 23, 1919, one month and three days after the second note became due.

There is some confusion in the record at this point. On October 29, 1919, the complainant moved for lief to amend his bill by adding a prayer for relief to the effect that if the court should decree that the mortgage may be foreclosed for "one installment only, to-wit, the first note thereof," then that the court would direct the proceeds from the sale of the lands to be paid into the registry of the court to await the maturity of the remaining "notes," etc. An order was made on the 28th of October, 1919, that after argument of exceptions to defendants' answer, etc., "it is ordered that the said motion be and the same is hereby granted." The defendant was given fifteen days in which to file answer to bill as amended. We assume that the order relates to the motion for lief

to amend made a day after the order was signed. The record does not show that the amendment was made.

On November 13th, 1919, the defendants filed their amended answer. We set out here the answer in full, because it presents the defense offered to the bill more clearly than a condensed statement would be.

"Now comes the defendants D. W. Bullard and Louida C. Bullard his wife, by their solicitors, Sparkman & Knight, in the above entitled cause, and saving and reserving unto themselves all rights that may be had or taken to except to the many errors and insufficiencies in said bill of complaint contained and answer said bill, or so much thereof as these defendants are advised is material for them to make answer unto, answering say: these defendants deny that they, or either of them, was on the 20th day of September, 1917, indebted to the complainant in the sum of $2,400.00 or any other sum whatsoever (but assert the truth to be that these defendants were then and there the owners of certain property in Hillsborough County, Florida, of great value, to-wit, of the value of............Dollars, all of which was known to said complainant, and said complainant, conniving and colluding with one D. W. Ross, who was then and there the agent of the complainant, did on said date falsely represent unto these defendants that the complainant was the *owner* of the land described in the complainant's bill of complaint; that the same was a farm, well stocked with live stock, farming implements and other equipment, thereon situate, and that the said complainant and his said agent, after representing that the complainant was the *owner* of the said farm and *live stock* thereon, together with the farming implements and equipment on said farm, did offer to trade same to these defendants for

the property owned by these defendants as before alleged; that these defendants believing the representations made by the complainant and his said agent, that the complainant was the owner of said *farm* with live stock thereon, together with the farming implements and equipment thereon situated, did agree to and with the complainant to trade the property so owned by these defendants for the property which was represented by the complainant and his said agent as being owned by the complainant, and these defendants in furtherance of said agreement did make and execute and deliver good and sufficient deeds of conveyance for their property above alleged to the complainant, and the complainant then and there executed a deed to the *land* described in the complainant's bill of complaint, but did not include therein the live stock, farming implements and equipment which formed a great portion of the consideration for said transaction and deal between the complainant and these defendants.   (These defendants further allege that all or a great portion of the live stock, farming tools and equipment, sold by said complainant to these defendants in the deal above set forth, was not, and never has been the property of the complainant, and that the sale or trading of same by the complainant to these defendants was done with intent to deceive these defendants.   These defendants further allege that the said complainant insofar as the live stock, farming implements and equipment, or a great portion thereof, which the complainant represented that he owned and was traded to these defendants, was known by the complainant at the time of making said trade, not to belong to him but said representations of ownership were made by said complainant and his said agent with intent to deceive these defendants into making and executing the deeds of conveyance made and

delivered to the complainant, as above alleged, and in making, executing and delivering of the notes described in the complainant's bill of complaint and the mortgage on the property described in the bill of complaint securing said notes. These defendants further allege that believing that the representations made by the complainant and his said agent as to the ownership of the live stock, farming tools and equipment above mentioned to be true, these defendants made, executed and delivered deeds of conveyance to their property above mentioned, and further believing said representations to be true, made, executed and delivered the notes described in the complainant's bill of complaint, and the mortgage therein described, securing said notes, all of which matters and things done by these defendants were done believing that the complainant was the owner of the live stock, farming tools and equipment situated on the property described in the complainant's bill of complaint, and had these defendants known that said representations of ownership made by the complainant and his said agent, were untrue, as they were, these defendants would not have made and executed the mortgage and notes described in the complainant's bill of complaint.)

"These defendants, further answering said bill of complaint, deny that the complainant is entitled under the terms of the mortgage sought to be foreclosed to claim the entire amount thereby secured, as due and owing at the time of filing said bill of complaint. (These defendants, further answering said bill of complaint, say that subsequent to the filing of said bill of complaint, to-wit, on the 20th day of September, 1919, the second one of said notes secured by the said mortgage fell due and prior thereto that these defendants tendered to the complainant the full amount of said note and the interest thereon; and

the said complainant refused to accept the same or to surrender the notes so falling due. And these defendants further allege that from said date above alleged that these defendants have stood ready to pay said note falling due on the 20th day of September, 1919, but the said complainant persists in his refusal to accept the same.) These defendants, having fully answered said bill of complaint; pray that said notes and mortgage be delivered up to be cancelled, and that an accounting be taken in this honorable court between the complainant and these defendants (and the valuation of the property represented by the complainant and his said agent be ascertained and the portion thereof that the complainant and his said agent falsely represented that he owned be deducted from the amount that may be found to be due from these defendants to the complainant, if any), and these defendants expressly offering to pay any difference found to be due from them to the complainant upon said accounting. and pray that if upon said accounting the complainant be found to be indebted to these defendants, that a decree be entered against said defendants for the sum so found to be due from said complainant to these defendants, and for such other and further relief in the premises as to Your Honor shall seem meet."

The complainant moved to strike those portions of the answer embraced in parentheses. The motion was granted as to those portions of the answer included in the first and third parentheses and overruled it as to that portion included in the second. The court allowed the defendants until December 10th, 1919, to "further plead" to the bill.

The record recites that on that date the *defendants* filed amendment to the *bill* of complaint." An inspection

of the document filed, however, shows that it was the answer which was amended. The amendment to the answer averred that subsequently to the filing of the bill a second note secured by the mortgage became due on September 20th, 1919, and that prior to that date the defendants tendered to the complainant the "sum of $928.00, the same being the amount due on said note so falling due, together with the interest thereon in full," etc.; that the complainant refused to receive the same, and the defendants attached to their answer and made it a part thereof a "certified check for $928.00, payable to the complainant," which it is averred the defendants are willing to deliver to the complainant "upon surrender and cancellation of the note above mentioned."

The cause came on to be heard on December 15, 1919, the complainant offered the original mortgage and three notes in evidence. The defendant objected to the introduction in evidence of the last note; that is to say, the one to become due September, 1920, according to its terms. The parties agreed that $50.00 would be a reasonable solicitor's fee for filing the bill and 10% upon the amount decreed by the court to be due for principal and interest. It was also agreed that at the time the second note became due, defendants sent by mail to the complainant a certified check on the Exchange National Bank of Tampa, payable to complainant for the full amount of second note, principal and interest, and complainant refused that "tender;" that the check is attached to the answer as amended and filed as "defendants' tender of $928.00;" that there has been no other tender and that no part of the indebtedness has been paid other than the "tender for the second note maturing September 20, 1919."

The court decreed the equities to be with the complain-

ant; that he was entitled to foreclosure as to the first note only; the second and third notes did not mature under the terms of the mortgage by the failure to pay the first note and interest at maturity; that as to the second note the defendant made a valid tender on the date of maturity, and that complainant is entitled to no costs or counsel fees for the collection of that note, nor to any interest after September 20th, 1919; that there is due on the two notes *"now due"* the sum of $1,600.00 principal and $278.00 interest. The sum of $145.00 is allowed as a reasonable attorney's fee. The defendants were decreed to pay the amount so found to be due within five days, and in default the lands were to be sold, the proceeds of the sale applied to the amount found to be due, and the amount remaining on hand should be paid into the registry of the court to the amount of $800.00 and interest for three years from September 20, 1917, at 8% per annum to await the maturity of the last note. There were other provisions in the decree relating to the indebtedness represented by the last note, which are unnecessary to be quoted.

The complainant appealed from the decree and assigned six errors. That the court overruled exceptions to the answer; in denying complainant's right to foreclose the mortgage for the entire sum; in denying by his order of November 26th, 1919, the motion of complainant to strike certain portions of defendant's answer; in refusing the complainant to introduce in evidence the third note; in permitting the defendants to amend their amended answer, and in rendering the final decree.

The defendants filed cross assignments of error complaining that the court erred in entering the order of November 26, 1919, granting the motion to strike cer-

tain portions of the answer and in entering the final decree.

Taking up for consideration first the cross assignments of error made by the appellees we find no merit in the point that they did not have sufficient notice of the complainant's motion. Appellees contend that they should have had five days notice of the complainants motion to strike the answer, or portions of it. The record in this case will not bear strict criticism from several points of view. The motion to strike together with notice to defendant's counsel are copied into the record. The record recites that on November 26th, 1919, the *motion* was filed, but the notice bears no date. It, however, does state that "complainant by counsel has this day filed motion to strike," etc. This indicates that both notice and motion were given and made the same day. However the judge's order recites that he "heard the argument of both counsel thereupon." Solicitors for defendants seem to have appeared in response to the notice and argued the motion, they appear to have raised no objection to the failure of complainants solicitor to give five days' notice of the motion, as required by Section 3 of Chapter 6907, Laws of Florida, 1915.

The failure to make the objection then was a waiver of the notice required by the statute. That requirement was not jurisdictional and the cause of the defendants appears not to have been injured by the lack of sufficient notice. The record discloses the fact of notice only in the judge's order, which, as stated, recites that "both counsel" were heard. The written notice copied into the record bears no evidence of having been served, but solicitors for defendants appeared and argued the motion. They must necessarily have had notice, therefore, how-

ever short. It is true the statute secured to them the right to have five days notice of the motion, which of course they knew, but their appearance and argument on the motion and failure to object to the irregularity of the notice, if there was in fact any irregularity, were inconsistent with their intention to rely upon their right.

The principle of estoppel upon which the doctrine of waiver rests applies in such case. See State Insurance Co. of Missouri v. Todd, 83 Pa. St. 272, 40 Cyc, 259-267.

Solicitors for appellees insist that the matter stricken from the amended answer constituted a valid defense or counter claim which it was permissible for him to set up under Chapter 6907, Laws of Florida, 1915. If the matter set up was such that it might be the subject of an independent suit in equity against the complainant and arose out of the transaction which was the subject-matter of the suit, then it constituted a good defense and should not have been stricken, because the remedy is a severe one and should not be resorted to except in cases palpably requiring it for the proper administration of justice. See Ray v. Williams, 55 Fla. 723, 46 South. Rep. 158; Southern Home Ins. Co. v. Putnal, 57 Fla. 199, 49 South. Rep. 922. If, however, that portion of the answer stricken was wholly irrelevant to the cause or improper and not merely bad for defective statement, there was no error in striking it. See Craft v. Smith, 45 Fla. 222, 33 South. Rep. 996; Parkhurst v. Stone, 36 Fla. 456, 18 South. Rep. 594; Russ v. Mitchell, 11 Fla. 80; Hammond v. A. Vetsburg Co., 56 Fla. 369, 48 South. Rep. 419; Fidelity & Deposit Co. of Maryland v. Aultman, 58 Fla. 228, 50 South. Rep. 991. That part of the answer relating to the representations by complainant concerning his ownership of the "farm and live stock thereon" and the

farming implements and equipment on the farm as forming a great part of the consideration for the transaction between the complainant and the defendant, appears to be an attack not upon the title to the lands described in the mortgage, but upon the notes for partial failure of consideration. It is averred that complainant said he was the owner of the land; that it was a farm well stocked with live stock, farming implements and other equipment; that he was owner of all; that the complainant and defendants agreed to trade, the latter conveying their "property" to complainant who in turn conveyed his "land" to them, but did not include the live stock, etc. Defendants then executed the notes and mortgage upon the land which had been conveyed to them by complainant. It is averred that "a great portion" of the live stock, farming implements and equipment which was "traded" to the defendants was not owned by the complainant and if they had known it they would not have executed the mortgage and notes. Whether the defendants obtained possession of the live stock, implements and equipment, whether the complainant has since acquired title to it and saved the defendants from loss, what loss if any they have actually suffered because complainant did not at the time of the trade own all the live stock, etc., in what way they have suffered damage and to what extent if at all is not averred and does not appear from the answer. As a plea of failure or partial failure of consideration it is utterly without merit. See Jones v. Streeter, 8 Fla. 83; McCallum v. Driggs, 35 Fla. 277, 17 South. Rep. 407. It contains no averment that renders the rather lengthy history of the transaction at all relevant as a plea of failure of consideration. It is insisted that the answer sets up a fraud practiced by the mortgagee so that the counter claim is within the provi-

sions of Chapter 6907 *supra*.. But whatever fraud is averred is without damage or injury to defendants so far as there are any averments of injury in the answer. In averring fraud in procuring the mortgage the resulting injury to defendants should be averred. See Allen v. United Zinc Co. 64 Fla. 171, 60 South. Rep. 182.

The defendants made the trade upon the complainant's representation that he owned the stock and equipment which were on his land or farm. Whether he owned the stock at the time or not is immaterial if he subsequently acquired the property, the defendants went into possession and have sustained no injury by loss of their possession.

It cannot be inferred that injury resulted to the defendants in that they have been deprived of the possession of any of the personal property. The answer was without merit as a defense upon the ground of fraud to the enforcement of the mortgage lien. If every averment in the answer was admitted to be true, it could have no influence in the decision of the suit. For anything appearing to the contrary the defendants are in possession of all the property, lands, live stock, implements, etc., and only fear that they will be dispossessed of a "portion" of the personal property. The answer constitutes no defense to the enforcement of the mortgage lien. See Randell v. Bourgardez, 23 Fla. 264, 2 South. Rep. 310; Paine v. Kemp. 77 Fla. 531, 82 South. Rep. 53. And as it constitutes no counter-claim for the cancellation of the notes for fraud, nor cancellation for failure of consideration, it was irrelevant to the cause and improper, and there was no error in striking it.

It follows that there was no error in striking that portion of the prayer for a valuation of the property which

the complainant falsely said he owned and that amount deducted from the indebtedness represented by the notes then due.

The assignments of error made by appellant in which complaint is made of the court's orders in overruling exceptions to certain parts of the defendants' answer and denying the complainant the right to foreclose the mortgage for the entire sum secured by it, and denying complainant's motion to strike that portion of the answer setting up a tender of payment of the second note and interest, and refusing to allow complainant to introduce in evidence the third note and in entering the decree for the amount stated, are well taken and the decree should be reversed because of the errors committed.

The provisions of the mortgage clearly show that the intention of the parties was that in the event of the failure of the maker of the note to pay the notes as they became due with interest the mortgagee may elect to treat the entire debt as due and may foreclose the mortgage to enforce payment.

The omission of the letter "s" at the end of the word "note" when the context clearly showed that the plural and not the singular form of the word was intended does not serve to defeat the intention of the parties.

The decree is reversed with instructions to enter a decree for the entire sum represented by the three promissory notes, together with interest according to the terms of the note and a solicitor's fee in accordance with the terms of the stipulation entered into between the parties.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.