382 So.2d 150 (1980)
FOOD FAIR, INC. et al., Appellant,
v.
Stanley ANDERSON et al., Appellee.
Nos. 78-1624/T4-167, 78-1625/T4-167A and 78-1928/T4-167B.
District Court of Appeal of Florida, Fifth District.
April 9, 1980.
*151 Goble D. Dean of Dean, Ringers, Morgan & Lawton, Orlando and Marcia K. Lippincott, Sanford, for appellant Food Fair, Inc.
James R. Barfield and Howard C. Coker of Cowles, Coker & Myers, Jacksonville, for appellant England.
Thomas E. Thoburn, Cocoa, for appellees.
COBB, Judge.
The appellees, Euna and Stanley Anderson, sued the appellants, Food Fair, Inc., and its employee, Douglas England, for intentional infliction of mental distress and for fraud. The facts, viewed in the light most favorable to the plaintiffs below, are as follows:
In 1975, Food Fair experienced a cash shortage, which led to an investigation by England, its security officer. Euna Anderson at that time had been a cashier and office worker for Food Fair for some six years. She was asked on June 5, 1975, to submit to a polygraph test administered by England at a motel room being used for the investigation. Upon arrival, she was told by England that it was company policy to have all employees either take the test or be terminated. She agreed to take the test, and signed consent forms to that effect. England then told Euna it was company policy to have her admit to prior thefts, because anybody who had worked for the company as long as she had must have taken something. He told her that if she denied such past thefts she would be terminated as untrustworthy. Euna protested her innocence, but England persisted that the alternative to confession was termination. Euna told him she needed the job because of family obligations and commenced to cry. England told her not to worry, that it would not go against her record, and that other employees had signed such statements and been retained by Food Fair in return for repayment of the amounts taken. Euna thereupon signed a statement admitting to the theft of $150, a figure suggested by England. The statement she signed was dictated by England and handwritten by Euna, except for an explanation at the bottom of the statement as to what Euna thought was causing the cash shortages. England then administered the polygraph and, afterwards, told her, "It didn't clear." She requested another test and he told her to return the next day because of her nervousness. She left the motel and the store manager drove her back to the store. Euna met with England the following day, June 6, at which time England told her she would have to admit to an amount greater than $150. England dictated a new statement, this time using a $500 figure, and Euna signed it. He then administered another polygraph and told Euna she "didn't clear". Later, she was told that she was suspended until the investigation was completed but would then be *152 notified when to return to work. Instead, she was terminated because of her admission of misappropriating company cash, although she claimed to have returned all money taken. As a result of the foregoing, according to the case for the plaintiffs, Euna Anderson lost her job[1] and her unemployment compensation, and suffered mental distress; Stanley Anderson testified to lost consortium. Euna estimated the loss in earnings comparing the Food Fair Job and her subsequent employment between June, 1975, and the time of trial in April, 1978, to be approximately $11,000.
On July 17, 1975, the plaintiffs met with Food Fair officials to discuss Euna's termination from employment. This meeting was tape-recorded by Stanley Anderson. The taped conversation included a statement by Stanley Anderson that Euna's truthfulness concerning her version of the threats made by the Food Fair investigator at the June meeting was established by an independent polygraph examination administered by a certified polygraph expert whom the Andersons had contacted subsequent to the England investigation. At trial, the tape recording of the July 17th meeting was admitted into evidence over objections by defense counsel. The objections were threefold: (1) that the tape was inaudible in many portions; (2) the tape was replete with hearsay; and (3) there was no individual identification of the voices on the tape, only evidence as to the identity of the people at the meeting.
The defendants' motion for a directed verdict at the close of trial was denied. The jury awarded compensatory damages against both defendants in the amount of $40,000 for Euna Anderson and in the amount of $7,500 for Stanley Anderson. In addition, punitive damages were awarded to Euna in the amount of $300,000 against Food Fair and in the amount of $60,000 against England.
Final judgment in those amounts was entered after various defense motions were denied. The issues on appeal, as framed by appellants are:
I. Did the plaintiff establish a prima facie case for the torts of intentional infliction of mental distress and fraud?
II. Was England's conduct within the scope of his employment by Food Fair?
III. Were the verdicts contrary to the manifest weight of the evidence?
IV. Were the awarded damages excessive?
V. Did the trial court commit reversible error in admitting the tape recording of the July 17th meeting between plaintiffs and the Food Fair officials?

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:
The first question posed above is the most difficult. The independent tort of intentional infliction of mental distress, sometimes called the tort of outrage, has been discussed, directly or inferentially, in a number of Florida cases. See, e.g., Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974); La Porte v. Associated Independents, Inc., 163 So.2d 267 (Fla. 1964); Slocum v. Food Fair Stores of Florida, 100 So.2d 396 (Fla. 1958); Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950); Lay v. Roux Laboratories, Inc., 379 So.2d 451 (Fla. 1st DCA 1980); Ford Motor Credit Co. v. Sheehan, 373 So.2d 956 (Fla. 1st DCA 1979); Estate of Harper v. Orlando Funeral Home, Inc., 366 So.2d 126 (Fla. 1st DCA 1979); Dowling v. Blue Cross of Florida, Inc., 338 So.2d 88 (Fla. 1st DCA 1976); Korbin v. Berlin, 177 So.2d 551 (Fla. 3d DCA 1965). The question is raised as to whether the facts adduced herein constitute "conduct exceeding all bounds which could be tolerated by society, of a nature especially calculated to cause mental damage of a very serious kind." Slocum, supra, at 397.
*153 The status in Florida of the independent action for intentional infliction of severe emotional distress was comprehensively reviewed and considered in a scholarly opinion by Judge Ervin in the recent case of Ford Motor Credit Co. v. Sheehan, supra. The factual situation therein concerned a false representation by a credit company that the debtor's children had been seriously injured, its purpose being to locate him. In affirming a verdict for the plaintiff, the district court noted that the majority rule, as set forth in the Restatement (Second) of Torts, Section 46(1) (1965),[2] applies in Florida. The test is not the actual intent to inflict severe emotional distress, but whether or not the actor knows that such distress is certain, or substantially certain, to result from his conduct. The rule also applies where the action is in reckless disregard of a high degree of probability that emotional distress will follow.
The Sheehan opinion examines four opinions of the Florida Supreme Court as the basis for its conclusion that Florida follows the majority rule: Kirksey, Slocum, LaPorte and Gilliam, supra. The test from Slocum, quoted above, is noted, and Judge Ervin then reaches the conclusion that "there is in Florida no bar to an independent action for intentional infliction of severe mental distress when the conduct alleged is `so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, ...'"[3]Sheehan, supra at 960.
According to comment d to Section 46, Restatement (Second) of Torts:
The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!" (emphasis added.)
We conclude that the evidence of the conduct of the defendant England in the instant case does not meet the test of outrageousness. See Slocum, Sheehan, and Dowling, supra. Therefore, it was error for the trial court to deny the defendants' motion for directed verdict in regard to the plaintiffs' claims based on the tort of intentional infliction of mental distress.

FRAUD AND DECEIT:
But what about the separate tort of fraud and deceit upon which this case also was submitted to the jury? There was evidence that Euna Anderson was discharged because of the misrepresentation to her by England that her admission of guilt, although false, would save her job. As a result, she was discharged and suffered mental anguish. Stanley Anderson seeks to recover derivatively for loss of consortium.
Three of the necessary elements of fraud are at issue. To begin with, the appellants argue that the plaintiffs failed to show the necessary element of injury to sustain an action for fraud and deceit. The injury sustained in an action for deceit must ordinarily be of a pecuniary nature. Pryor v. Oak Ridge Dev. Corp., 97 Fla. 1085, 119 So. 326 (1928). Euna's testimony in regard to loss of earnings due to the wage differentiation between her discharge and time of trial was inadmissible in the absence *154 of any showing as to the probability that she would have remained in the employment of Food Fair for any specified period of time. The defense objection to that testimony should have been sustained. Cf. Mays v. Stratton, 183 So.2d 43 (Fla. 1st DCA 1966). This leaves mental anguish to satisfy the injury element. It is stated in 37 Am.Jur.2d Fraud & Deceit § 292 at 389 (1968):
A false statement which results in actual damage to the plaintiff's economic or legal relationships will support an action therefor ... That there is a mere difficulty of estimation of injury . . does not bar recovery. Although cases of fraud and deceit usually involve injury to property rather than to the person, it has been held that a cause of action for deceit may arise where, as a result of false representations, the damage is personal injury, and that, therefore, physical injuries may be the basis of damages recoverable in an action for fraud and deceit.
In Campbell v. Government Employees Ins. Co., 306 So.2d 525, 531 (Fla. 1975), the Florida Supreme Court observed:
Compensatory damages do not sometimes offer reparation for mental invasion. Moreover, it is difficult to translate pain and suffering, disfiguration, loss of enjoyment of life, loss of prospects, into compensatory dollars. Punitive damages tend to bring to punishment types of certain cases of oppressive conduct, i.e., slanders, malice, cruelties; anti-social, unethical and unfair treatment, often criminally unpunishable and which in actual life go unnoticed in the criminal law.
In George Hunt, Inc. v. Wash-Bowl, Inc., 348 So.2d 910, 912-913 (Fla. 2d DCA 1977), the Second District stated:
It is recognized, in Florida and other jurisdictions where fraud is asserted as a defense to a contract, that all essential elements of the fraudulent conduct, including some injury, must be met. 14 Fla.Jur., Fraud and Deceit §§ 41, 72 (1957); 37 Am.Jur.2d, Fraud and Deceit § 291 (1968); Annot., 91 A.L.R.2d 346 (1963). Cf. Hanley v. Bullard, 80 Fla. 578, 86 So. 439 (1920); Casey v. Welch, 50 So.2d 124 (Fla. 1951). As stated in the early case of Stokes v. Victory Land Co., 99 Fla. 795, 128 So. 408, 410 (1930),
"It is of the very essence of an action of fraud and deceit that the same shall be accompanied by damage, and neither damnum absque injuria nor injuria absque damnum by themselves constitute a good cause of action... .
"This principle is so generally understood and universally recognized that citation of authority is a work of supererogation."
This rule then is applicable whether the pleadings alleging fraud are defensive or offensive in nature and is not dependent on the state of performance of the contract at the time suit is instituted.
Florida decisions defining injury go in both directions in explaining what constitutes damage sufficient to warrant actionable fraud defensively and offensively. Early cases reflect a requirement that the injury sustained must ordinarily be pecuniary in nature. See e.g., Pryor v. Oak Ridge Dev. Corp., 97 Fla. 1085, 119 So. 326 (1928). Other Florida decisions seem to align themselves with the general rule enunciated in 37 Am.Jur.2d, Fraud and Deceit § 292 (1968), "[D]amage need not be subject to accurate measurement in money, but may result from the fact that the defrauded party has been induced to incur legal liabilities or obligations different from those represented or contracted for... ." Cf. Ft. Myers Dev. Corp. v. J.W. McWilliams Co., 97 Fla. 788, 122 So. 264 (1929).
Thus, the injury sustained must cause a party to suffer some loss, be it pecuniary or otherwise.
In the instant case, there was evidence that, as a result of England's deceit, Euna suffered some mental anguish, although the extreme mental distress, as that term is defined in the Restatement and in Slocum, was not foreseeable and, therefore, not a basis to sustain the independent tort of outrage. Although as a general rule, no compensatory damages may be recovered *155 for mental pain and suffering absent physical injury,[4] this close case falls within the exception to the general rule since the jury could have found malice of conduct which would support punitive damages. See Kirksey, LaPorte, supra. See also Mashunkashey v. Mashunkashey, 189 Okla. 60, 113 P.2d 190 (1941). Therefore, there was present the injury element to support the fraud action. In addition, Stanley Anderson's derivative action for damages for loss of consortium was proper, and may be proper in the new trial should the jury find Euna was injured.
At common law a husband had a right of action to recover damages for the impairment of his wife's capacity to render marital service to him caused by the tortious act of a third person ... Waller v. First Savings & Trust Co., 103 Fla. 1025, 138 So. 780, 789 (1931) (Whitfield, J., concurring).
The underlying process of thinking that evolved the common-law rule seems to be that the law would allow a recovery by one person having a special property interest in the services of another when such other was injured by the wrongful act of a stranger. Ripley v. Ewell, 61 So.2d 420, 422 (Fla. 1952).
In the majority of cases, the husband is allowed to bring an action for loss of consortium of his wife when she suffers physical personal injury through the negligence of another; e.g., Busby v. Winn & Lovett Miami, Inc., 80 So.2d 675 (Fla. 1955). However,
the right to recover also exists wherever such loss is caused by another's wrongful act intentionally inflicted, as for example, a malicious prosecution of the wife, or a defamation of her character. 41 Am.Jur.2d Husband and Wife § 451 at 379 (1968); see, e.g., Garrison v. Sun Printing & Publishing Ass'n., 207 N.Y. 1, 100 N.E. 430 (1912); Kujek v. Goldman, 150 N.Y. 176, 44 N.E. 773 (1896).
Concerning the next element, the appellants Food Fair and England argue that the latter's statement to Euna, that she would be fired if she did not confess to theft, is not a proper predicate for the establishment of fraud. They argue that the statement upon which an action for fraud may be based must be a statement of a past or existing fact, not an opinion, promise or statement of futurity. Sutton v. Gulf Life Ins. Co., 138 Fla. 692, 189 So. 828 (1939); Brod v. Jernigan, 188 So.2d 575 (Fla. 2d DCA 1966); Evans v. Gray, 215 So.2d 40 (Fla. 3d DCA 1968), cert. denied, 222 So.2d 748 (Fla. 1969); Stoler v. Metropolitan Life Ins. Co., 287 So.2d 694 (Fla. 3d DCA 1974). The plaintiffs argue that England's statement concerned an existing fact of company policy. We believe the jury properly could have found England's statement to be one of fact.
Where a person fraudulently and positively, as with personal knowledge, states that something is to be done or is to occur when he knows it is not to be done or to occur, the statement will support an action in fraud. This is not a case of prophecy or predication of something which it is merely hoped or expected will occur in the future, but a specific affirmation of an arrangement under which something is to occur when the party making the affirmation knows perfectly well that no such thing is to occur; such statements and representations, when false, are actionable. 37 Am.Jur.2d Fraud & Deceit § 59 at 90-91 (1968).
Next, appellants Food Fair and England claim that Euna was not justified in relying upon England's statement. Appellants argue that the plaintiff must establish that he exercised reasonable diligence for his own protection. Potakar v. Hurtak, 82 So.2d 502 (Fla. 1955); Butts v. Dragstrem, 349 So.2d 1205 (Fla. 1st DCA 1977); cert. denied, 361 So.2d 831 (Fla. 1978). Food Fair argues that England's statement was patently incredible, and Euna failed to question the accuracy of England's statement, although she had the opportunity to do so when the store manager drove her back to the store after the first meeting. Plaintiffs *156 argue that Euna's reliance was justified. Plaintiffs note that Euna did not have an opportunity to discuss England's statements with higher Food Fair authorities until after the meeting, that Euna was led to believe that she would be cleared by England the next day and allowed to return to work, and that England was security supervisor for 70 stores in four states. We believe there was evidence from which the jury could have determined that Euna justifiably relied upon the statements made by England, a company investigator who apparently had the power to fire. The jury may well have believed that Euna reasonably believed she had no chance of successfully going over the investigator's head.

THE REMAINING ISSUES:
Because of our decision in response to the fifth question, we do not deal in extenso with the second and third questions other than to observe that there was evidence to support a jury finding that England acted within the scope of his employment, and that there was sufficient evidence presented to sustain a jury verdict for Euna Anderson in respect to fraud. The question of the excessiveness of damages raised by the fourth question is rendered moot by our decision to reverse on the issue set forth in the fifth question.
We have reviewed the tape recording of the July 17, 1975, meeting, which was admitted into evidence over the three objections listed above. There are numerous unintelligible portions of the tape, but we do not believe that fact alone would require excluding the intelligible portions of the tape. Gomien v. State, 172 So.2d 511, 515 (Fla. 3d DCA 1965); Brady v. State, 178 So.2d 121 (Fla. 2d DCA 1965); Annot. 57 A.L.R.3d 746, 752. The greater problem is that a substantial portion of the tape consists of self-serving statements by Stanley Anderson concerning his interpretation of the facts of the case and repeating hearsay statements of others, including the purported results of an independent polygraph test of Euna Anderson concerning the conversations that transpired between her and Douglas England in the motel room in June, 1975. Since the outcome of this case turns largely on the comparative credibility of Euna Anderson and Douglas England, whose versions of the June meetings were in sharp conflict, the error of the trial court in admitting the hearsay polygraph evidence cannot be classified as harmless. The plaintiffs could have offered selective portions of the tape recording constituting admissions against interest, but instead offered the tape in its entirety, to which the defendants properly objected. In addition, there was no individual identification of the voices on the tape other than the evidence as to who was present in the room at the time of the meeting. There were six people in the room, and, presumably, all are heard speaking on the tape, sometimes simultaneously. Whereas we question the admissibility of the tape on this latter ground, we believe that this was a matter primarily within the discretion of the trial court.
Accordingly, we reverse the judgments for Euna Anderson and Stanley Anderson and remand for a new trial on the issues of liability and damages, compensatory and punitive, in respect to their claims based on fraud and deceit.
REVERSED and REMANDED.
ORFINGER, J., and WATSON, RICHARD O., Associate Judge, concur.
NOTES
[1] It is conceded by all parties that Food Fair had the right to discharge Euna at will, without hearing or cause.
[2] One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
[3] See comment j to § 46, Restatement (Second) of Torts (1965).
[4] 9A Fla.Jur. Damages § 90 (1972).