429 So.2d 1287 (1983)
METROPOLITAN LIFE INSURANCE COMPANY, Appellant/Cross Appellee,
v.
Ernest D. McCARSON, Sr., Etc., et al., Appellees/Cross Appellants.
No. 80-1263.
District Court of Appeal of Florida, Fourth District.
April 6, 1983.
Rehearing Denied May 10, 1983.
*1288 Donald J. Sasser of Johnston, Sasser & Randolph, and William Pruitt, West Palm Beach, John G. Pare', Tampa, and Richard G. Mandell, New York, for appellant/cross-appellee.
Samuel D. Phillips, Thompson & Gesch, and Larry Klein, West Palm Beach, for appellees/cross-appellants.
ANSTEAD, Judge.
This is an appeal from a final judgment against Metropolitan Life Insurance Company awarding damages in a wrongful death action predicated upon Metropolitan's *1289 alleged wrongful termination of medical insurance benefits. Metropolitan claims that the evidence was insufficient to support the award or, alternatively, that certain trial errors mandate a new trial. We affirm.
While we recognize that the facts were controverted, in determining the sufficiency of the evidence we are obligated to construe the evidence and the inferences therefrom most favorably to the prevailing party. Anchor Hocking Glass Corp. v. Allen, 161 So.2d 853 (Fla. 1st DCA 1964). Although this action was instituted in 1977, its roots reach back to 1973 when Metropolitan issued a group health insurance policy to Ernest McCarson's small paint and body shop business. Initially, Ernest McCarson was the insured, and Lucille McCarson, his wife, was one of three employees covered. After the initiation of this policy, it was discovered that Mrs. McCarson had Alzheimer's Disease, a progressive and degenerative brain disease which results in premature senility. In 1974 Metropolitan unilaterally terminated the policy claiming that the McCarsons had misrepresented Lucille McCarson's physical condition on the initial application. Subsequently, the McCarsons sued and recovered damages as well as a court order that the policy be reinstated and benefits paid in accord therewith. However, the controversy between the parties over coverage continued unabated.
Early in 1977 Mrs. McCarson's condition required her to have private nursing care in her home. Metropolitan was fully aware of this requirement and initially authorized the employment of a private nursing service. Metropolitan was also aware that the McCarsons had no other means to secure this nursing care. Metropolitan had direct dealings with the nursing service involved and paid claims for such services until April 5, 1977. Metropolitan thereafter withheld all monies due, claiming that there was a question of Mrs. McCarson's eligibility for Medicare which would in turn affect Metropolitan's obligation to pay for nursing services. During this same time, however, Metropolitan continued to accept premiums, and evidence was presented that Metropolitan knew that Mrs. McCarson was not eligible for Medicare and that Medicare did not cover home nursing services.
Metropolitan was repeatedly advised by the nursing service that unless payments were made the services would be terminated. Although Metropolitan continued to assure the nursing service that payments would be forthcoming, no such payments were made and, ultimately, on June 3, 1977, Mrs. McCarson's nursing services were terminated. Although Mr. McCarson initially attempted to care for her at home by himself and with the aid of non-professionals, Mrs. McCarson's condition worsened and she was placed in a nursing home. At the nursing home her condition deteriorated dramatically. At home Lucille McCarson had recognized her husband and was able to walk with assistance, while at the nursing home she no longer walked at all or recognized her husband or her surroundings. Finally, she had to be placed in restraints to prevent her from removing medical devices attached to her body to sustain her well-being.
Throughout this period Mr. McCarson attempted without success to have Metropolitan acknowledge its liability for the home nursing services. Finally, and while Mrs. McCarson was still living, the McCarsons instituted a second suit against Metropolitan seeking damages for bad faith and simple breach of contract, intentional infliction of emotional distress, punitive damages and attorney's fees. Lucille McCarson died of a heart attack in the nursing home on October 11, 1977, and the McCarson action was amended, substituting Ernest McCarson as personal representative of his wife's estate and adding a count alleging that Metropolitan's actions had resulted in Mrs. McCarson's premature death.
At trial the jury awarded damages for breach of contract, intentional infliction of emotional distress to Mrs. McCarson while she was alive, and wrongful death, but declined to make a punitive damage award. After trial the court awarded appellees attorney's fees for the breach of contract *1290 recovery and set aside the award for damages suffered by Mrs. McCarson while living. These post-trial actions are also at issue in this appeal.
Metropolitan contends that it should have been granted a directed verdict on the claim for wrongful death. As noted, as a predicate for the death claim, the McCarsons charged Metropolitan with breach of contract, bad faith, and the intentional infliction of emotional distress in terminating Mrs. McCarson's home nursing services. Because we find sufficient evidence to sustain the award under the intentional infliction of emotional distress claim we will not discuss the breach of contract or bad faith actions, the alternate bases for the wrongful death recovery.
The independent tort of intentional infliction of emotional distress was explicitly recognized by the First District in Ford Motor Co. v. Sheehan, 373 So.2d 956 (Fla. 1st DCA 1979). The Fifth District recognized the tort in Food Fair, Inc. v. Anderson, 382 So.2d 150 (Fla. 5th DCA 1980). The Third District appeared to reject the tort in Gellert v. Eastern Airlines, 370 So.2d 802 (Fla. 3d DCA 1979), although in an alternative holding it declared that evidence was insufficient to establish the elements of such an action. The Second District, in an opinion that denied the conflict between Gellert and Sheehan, has denied the existence of such a tort in Florida and certified the issue to the Florida Supreme Court. Gmuer v. Garner, 426 So.2d 972 (Fla. 2d DCA Case No. 81-2368, opinion on rehearing filed Feb. 21, 1983) [8 F.L.W. 649]. Both Gellert and Sheehan base their conclusions upon Florida Supreme Court pronouncements in Kirksey v. Jernigan, 45 So.2d 188 (Fla. 1950); Slocum v. Food Fair Stores of Florida, 100 So.2d 396 (Fla. 1958); LaPorte v. Associated Independents, Inc., 163 So.2d 267 (Fla. 1964); and Gilliam v. Stewart, 291 So.2d 593 (Fla. 1974). These cases do not directly address the question, but do, in our view, implicitly approve an action for intentional infliction of emotional distress upon sufficient facts.
After examining these cases, and our own precedent, Scheuer v. Wille, 385 So.2d 1076 (Fla. 4th DCA 1980), we conclude that the Sheehan court's analysis of this issue is the correct one.[1] In so doing we acknowledge our conflict with Gmuer and Gellert. We also concede that our holding is greatly influenced by the Supreme Court's dictum in Gilliam:
There may be circumstances under which one may recover for emotional or mental injuries, as when there has been a physical impact or when they are produced as a result of a deliberate and calculated act performed with the intention of producing such an injury by one knowing that such act would probably  and most likely  produce such an injury, but those are not the facts in this case.
Gilliam at 595. The tort of intentional infliction of mental distress, as adopted by Sheehan and Anderson, is defined by Section 46, Restatement (Second) of Torts (1965) as follows:
§ 46. Outrageous Conduct Causing Severe Emotional Distress
(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
*1291 This statement of the action is remarkably similar to the language used by the Supreme Court in Gilliam and we adopt it here. In our view there is a need for the recognition of such an action to control intentionally harmful conduct which would otherwise go unpunished, and which, in cause and effect, can hardly be distinguished from other intentional torts such as assault. Compare Lay v. Kremer, 411 So.2d 1347 (Fla. 1st DCA 1982) with Lay v. Roux Laboratories, Inc., 379 So.2d 451 (Fla. 1st DCA 1980). By permitting a cause of action for assault, the law has long authorized a recovery for the distress caused by one who offers to do injury to another and has the apparent present ability to do so. We can perceive no valid reason why recovery should be permitted for purposely harmful conduct in the one instance but denied in the other.
We also believe there is sufficient evidence in the record of this case to support a finding that Metropolitan's actions constituted the intentional infliction of emotional distress. In our view, the jury could have concluded that Metropolitan's conduct was more than a mere failure to honor a contractual commitment and more than mere negligence in handling a claim. Such a conclusion is supported by the evidence of "bad blood" between the parties that considerably predated the termination of Mrs. McCarson's nursing services, including the fact that there was no merit to the Medicare issue and that Metropolitan had already been judicially determined to be responsible for Mrs. McCarson's medical care claims. Upon consideration of this evidence, the jury could have concluded that Metropolitan, although fully aware of the serious condition of Mrs. McCarson and of its obligations to her, discontinued the nursing services to "spite" the McCarsons notwithstanding the potentially devastating consequences to her.
In addition, whether or not it was foreseeable that the decedent would die after nursing services were terminated, we believe it was reasonably foreseeable that some harm would occur. See Railway Express Agency v. Brabham, 62 So.2d 713 (Fla. 1952). We have already discussed the evidence of Metropolitan's awareness of Mrs. McCarson's need for the nursing services and the potentially adverse consequences to her from the loss of such services. Several physicians testified to the adverse consequences to Mrs. McCarson of being deprived of home nursing services and opined that there was a causal relationship between the loss of expert home care and Mrs. McCarson's premature death. This evidence, along with the graphic evidence of Mrs. McCarson's dramatic deterioration upon termination of the home care, was sufficient in our view to demonstrate a causal relationship between Metropolitan's actions and Mrs. McCarson's death. Although not identical to a situation where required medical services are intentionally withheld we believe the circumstances here, including evidence of Metropolitan's awareness that the McCarsons would be unable to continue the nursing services without the insurance payments therefor, negate any substantial practical difference between the two situations. Cf. Wilkins v. Grays Harbor Community Hospital, 71 Wash.2d 178, 427 P.2d 716 (Wash. 1967).
We find no error by the trial court in setting aside the award for damages sustained by Mrs. McCarson while she lived. The original claim for intentional infliction was filed by Mrs. McCarson while she was alive, and this claim would have survived if her death had resulted from other causes. § 46.021, Fla. Stat. (1981). The Florida Wrongful Death Act does not affect the survival of such actions. However, if a wrongful act causes death, the Wrongful Death Act allows the estate to recover damages only for prospective loss of earnings of the decedent and for the decedent's medical and funeral expenses which were not recovered by the survivor. § 768.21(6). The estate may not recover damages for the decedent's pain and suffering between the wrongful act and death. Martin v. United Security Services, Inc., 314 So.2d 765 (Fla. 1975). We do not believe the fact that the claim is based upon an intentional tort rather than a negligent act is sufficient to override *1292 the legislative intent to limit damages to those recoverable in the death action.
We have also considered Metropolitan's claim of trial court error with respect to the jury instructions, the admission of evidence of Metropolitan's assets, and the award of attorney's fees. Because we find the issue of punitive damages was properly tried and submitted to the jury, we find no error in the admission of evidence as to assets. We do not believe any error in the instructions, which, in any event, were consistent with the tort actions pled, was preserved. We find no abuse of discretion on the attorney's fees issue despite the fact that the fees awarded exceeded the breach of contract damages.
Accordingly, we affirm the judgment of the trial court.
HERSEY and HURLEY, JJ., concur.
NOTES
[1] Interestingly enough, Metropolitan, in its brief, concedes the legal validity of an intentional infliction claim:

"Mrs. McCarson did have the right to bring an action for intentional infliction and emotional distress. Assuming that the elements of such an action were proven, and that the emotional distress was the proximate cause of death, this might support a wrongful death action (since Mrs. McCarson would have had this cause of action had she lived). This court need not determine this, for plaintiffs have wholly failed to introduce evidence of this (and their intentional infliction claim was stricken by the Trial Judge)."
While our review of the record reflects that the trial court entered an order striking the claim as to damages suffered by Mrs. McCarson during her lifetime, the wrongful death claim which is the subject of this appeal was obviously left intact.