619 So.2d 983 (1993)
Linda WILLIAMS and Rosemarie Williams, Appellants,
v.
CITY OF MINNEOLA, et al., Appellees.
No. 92-624.
District Court of Appeal of Florida, Fifth District.
April 30, 1993.
Rehearing Denied June 21, 1993.
*984 Jack R. Elliott, of Arfken & Elliott, Melbourne, for appellants.
Jennings L. Hurt, III, and Peter J. Zinaich of Rissman, Weisberg, Barrett & Hurt, P.A., Orlando, for appellees.
DIAMANTIS, Judge.
This is an appeal from a summary judgment in favor of appellees City of Minneola and Minneola Police Department. This is the second time that this matter has been before this court. The trial court granted summary judgment on the basis of sovereign immunity. We affirm.
The facts of this case are aptly summarized in our prior opinion:
Fourteen year old Glenn Williams, the son of one of the appellants and the brother of the other, died of an apparent drug overdose. Officers of the Minneola Police Department considered it possible that the death resulted from suicide or foul play. Officers Cason, Lameida, and Lovell participated in an investigation.
On November 29, 1986, the day after Glenn died, an associate of the Medical Examiner performed an autopsy which Officers Cason, Lameida, and Lovell attended at the direction of Minneola Police Chief Joseph Brennan. Officer Cason, on orders from Chief Brennan, took *985 35mm still photographs of the autopsy to preserve and document any physical evidence which might assist in the investigation of the death. Officer Lovell, using a borrowed video camera, made an approximately hour long videotape of the autopsy.
The officers took the videotape to Chief Brennan's home, where the men watched about five minutes of it. Officer Lovell then took the tape home with him. Chief Brennan stated that he was shocked when he learned about the videotaping, and that he had told Lovell to put the tape in the evidence locker. Lovell testified that he had the chief's consent to take the tape home.
The next evening, at Lovell's home, the tape was viewed by Lovell, Officer Poole of the Mascotte Police Department (from which the video camera had been borrowed), Officer Davis of the Minneola Police Department (who stayed for only about ten minutes), and a man named John Warrington who had been invited to Lovell's house for dinner that evening and wanted to see the videotape. Lovell testified that he knew that Warrington had been a police officer and believed that he would soon be employed by the Minneola Police Department. Warrington was never professionally involved with the Minneola Police Department and had not worked as a police officer for six years.
On February 21, 1987, The Orlando Sentinel published an article describing the viewing at Lovell's home as having taken place in a party atmosphere where the audience joked and laughed. Earlier in February Chief Brennan had told the appellants about the videotaping and the viewing at Lovell's home. In deposition, Warrington denied making or signing a statement (not in evidence) allegedly made to the Minneola Police Department on February 25, 1987 which supported the newspaper's version of events. The four men who had been at Lovell's home that evening testified that the atmosphere had been professional, with no unseemly laughter or joking.
In a separate incident, Chief Brennan showed the still photographs of the autopsy to a man named Art Brewer, who was cleaning the chief's office. The pictures were on Chief Brennan's desk; he passed them to Brewer, asking, "Do you want something to eat?"
Williams v. City of Minneola, 575 So.2d 683, 685-686 (Fla. 5th DCA), rev. denied, 589 So.2d 289 (Fla. 1991) (footnote omitted). In reversing the order of summary judgment entered against appellants, we held:
that the appellants have stated a cause of action for outrageous infliction of emotional distress by reckless conduct in connection with pictures of a dead body, and that the facts before the trial court did not preclude as a matter of law the possibility of a jury verdict in the appellants' favor (that is to say, a jury reasonably could find intentional infliction of emotional distress upon a proper evidentiary basis).
Williams, 575 So.2d at 694.
On remand, appellees moved for summary judgment and the trial court granted the motion, concluding that the doctrine of sovereign immunity bars appellants from recovering on their claim for outrageous infliction of emotional distress. Section 768.28(9), Florida Statutes (1985), defines sovereign immunity as follows:
768.28 Waiver of sovereign immunity in tort actions; recovery limits; limitation of attorney fees; statute of limitations; exclusions. 
* * * * * *
(9)(a) No officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property ... The exclusive remedy for injury or damage suffered as a result of an act, event, or omission of an officer, employee, or *986 agent of the state or any of its subdivisions or constitutional officers shall be by action against the governmental entity, or the head of such entity in his official capacity, or the constitutional officer of which the officer, employee, or agent is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety or property. The state or its subdivisions shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the course and scope of his employment or committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.

Section 768.28(9)(a), Fla. Stat. (1985) (emphasis added). Appellants argue that the trial court erred in concluding that their cause of action for outrageous infliction of emotional distress by reckless conduct is barred by sovereign immunity because, to recover, they are only required to prove recklessness, not (1) bad faith, (2) malicious purpose, or (3) wanton and willful disregard of human rights. This argument lacks merit because reckless conduct is the equivalent of willful and wanton conduct.
In Bryant v. School Board of Duval County, 399 So.2d 417 (Fla. 1st DCA 1981), rev'd on other grounds, Rupp v. Bryant, 417 So.2d 658 (Fla. 1982), the plaintiffs sued the school board, the school principal, and a student club faculty adviser for injuries received by the student-plaintiff during a hazing incident. Count IV of the complaint, directed against the principal and the adviser, alleged that the employees' conduct was "gross and reckless." Bryant, 399 So.2d at 423. Observing that courts in other states apparently support the view that the terms "reckless" and "wanton" are interchangeable, see Bryant, 399 So.2d at 423 n. 4, the court construed the phrase "gross and reckless" to come within the ambit of the phrase "wanton and willful" misconduct as used in section 768.28(9), the sovereign immunity statute. Id. at 423. Thus, the court concluded that Count IV was actionable only against the employees in their individual capacities and not against them as agents of the school board. Id.
In other factual situations, Florida courts have equated reckless conduct with willful or wanton conduct. In the context of punitive damages, these terms have been used interchangeably. See Chrysler Corp. v. Wolmer, 499 So.2d 823, 824-825 (Fla. 1986); White Construction Co. v. Dupont, 455 So.2d 1026, 1027-1028 (Fla. 1984); Carraway v. Revell, 116 So.2d 16, 20 n. 12 (Fla. 1959). Reckless driving has been described as driving with a willful or wanton disregard for the safety of persons or property. See Collins v. State, 605 So.2d 568, 569 (Fla. 5th DCA 1992). In a vehicular homicide case, for purposes of jury instructions or statutory construction, the terms reckless or willful or wanton conduct have no significant difference because they are used interchangeably. See W.E.B. v. State, 553 So.2d 323, 325-326 (Fla. 1st DCA 1989); Rushton v. State, 395 So.2d 610, 612-613 (Fla. 5th DCA 1981). See generally Black's Law Dictionary (5th ed. 1979) (defining the terms recklessness, wanton, wanton act, and willful or wanton conduct).
Moreover, the courts of this state have recognized that a cause of action for intentional infliction of severe mental or emotional distress essentially involves the deliberate or reckless infliction of mental suffering on another and that the elements of this cause of action are (1) the wrongdoer's conduct was intentional or reckless; that is, he intended his behavior when he knew or should have known that emotional distress would likely result; (2) the conduct was outrageous; that is, as to go beyond all bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community; (3) the conduct caused emotional distress; and (4) the emotional distress was severe. Dependable Life Insurance Co. v. Harris, 510 So.2d 985 (Fla. 5th DCA 1987); Dominguez v. Equitable Life Assurance Society, 438 So.2d 58 (Fla. 3d DCA 1983), approved, Crawford & Co. v. Dominguez, 467 So.2d 281 (Fla. 1985). See also Metropolitan Life Insurance Co. *987 v. McCarson, 467 So.2d 277 (Fla. 1985); Food Fair, Inc. v. Anderson, 382 So.2d 150 (Fla. 5th DCA 1980); Restatement (Second) of Torts § 46 cmt. d (1965).[1]
In Williams, we observed that, where the infliction of emotional distress is a result of negligence and not of intent or its equivalent in recklessness, in order to recover the plaintiff must prove that he or she was physically affected by the incident, even in cases where another person's injury caused the plaintiff's distress. Williams, 575 So.2d at 693. If we were to subscribe to appellants' argument that the requirement of recklessness in this context is less stringent than willful and wanton conduct, then this tort becomes a species of either negligence or gross negligence and, conceivably, requires the plaintiff to be physically affected by the incident in order to recover. More importantly, we would be redefining this tort from one which proscribes outrageous conduct to one which governs some degree of negligent conduct. Such a redefinition would be contrary to established precedent.[2]
Thus, we conclude that, if the jury found that the appellees' conduct supported a claim for outrageous infliction of emotional distress by reckless conduct, this conduct would at least constitute willful and wanton conduct under section 768.28(9); therefore, the doctrine of sovereign immunity would bar the instant action from being maintained against appellees.
Appellants additionally contend that the principle of law of the case makes the doctrine of sovereign immunity inapplicable to the instant case. Appellants' contention is based upon the fact that in the prior appeal the appellees argued sovereign immunity as an alternative basis to affirm the summary judgment. The principle of law of the case, binding parties to the law as established in a prior appeal, is a principle followed by courts to avoid reconsideration of points of law which were, or should have been, adjudicated in a former appeal of the same case; its purpose is to lend stability to judicial decisions, to avoid piecemeal appeals, and to bring litigation to an end as expeditiously as possible. Strazzulla v. Hendrick, 177 So.2d 1 (Fla. 1965). The law of the case principle is also applied where the issue could have been, but was not, raised, Airvac, Inc. v. Ranger Insurance Co., 330 So.2d 467 (Fla. 1976), or where the question was decided by implication, Alford v. Summerlin, 423 So.2d 482 (Fla. 1st DCA 1982). See Valsecchi v. Proprietors Insurance Co., 502 So.2d 1310 (Fla. 3d DCA 1987).
Unlike Airvac, where in the prior trial proceedings a party's contention was rejected and not raised in the prior appeal, here, neither the trial court nor this court *988 ruled upon the issue of sovereign immunity. Additionally, assuming that the law of the case principle is applicable to this matter, an exception to the law of the case principle allows an appellate court to reconsider and reverse a previous ruling that has become the law of the case where manifest injustice would result from a strict and rigid adherence to the rule. See Harris v. Lewis State Bank, 482 So.2d 1378, 1383 (Fla. 1st DCA 1986). Here, it would certainly result in manifest injustice to apply the law of the case principle to bar appellees from raising the issue of sovereign immunity when it was this court which chose not to address the issue in the prior appeal.
AFFIRMED.
W. SHARP, J., and SPRINKEL, G.A., IV, Associate Judge, concur.
NOTES
[1] Both Metropolitan Life Insurance Co. v. McCarson, 467 So.2d 277 (Fla. 1985), and Food Fair, Inc. v. Anderson, 382 So.2d 150 (Fla. 5th DCA 1980), adopted comment d to section 46, Restatement (Second) of Torts (1965). In Metropolitan Life, the Florida Supreme Court stated:

The Fourth District joined with the First and Fifth in adopting Section 46, Restatement (Second) of Torts (1965) as the appropriate definition of the tort. Nonetheless, the Fourth District did not conform its findings to the comments explaining the application of this definition:
d. Extreme and outrageous conduct
... . . It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
Metropolitan Life, 467 So.2d at 278-279.
[2] Gross negligence does not meet the standard for an award of punitive damages, see Chrysler Corp. v. Wolmer, 499 So.2d 823, 824 (Fla. 1986); Como Oil Co. v. O'Loughlin, 466 So.2d 1061, 1062 (Fla. 1985); White Construction Co. v. Dupont, 455 So.2d 1026, 1028 (Fla. 1984); Carraway v. Revell, 116 So.2d 16, 20 (Fla. 1959), and, thus, certainly cannot meet the standard to establish the tort of outrageous and reckless conduct, see Metropolitan Life Insurance Co. v. McCarson, 467 So.2d 277, 278-279 (Fla. 1985); Food Fair, Inc. v. Anderson, 382 So.2d 150, 153 (Fla. 5th DCA 1980).